had employed a hired driver to take Randolph and his friends out for a pleasure ride, the responsibility of appellant would have been equally clear. The machine would have been used for its sole purpose, i. e., the family pleasure. The fact that the son drove himself did not in any way change the business for which the machine was used."

We find nothing in the exceptions requiring further consideration.

The judgment of this Court is that the judgment of the Circuit Court be affirmed.

---

## 11405

### DAVIS v. S. C. COTTON GROWERS CO-OP. ASSOCIATION *ET AL.*

(121 S. E., 260)

CORPORATIONS—AGRICULTURE—CORPORATE ELECTION RULE TO COUNT FIRST OF TWO BALLOTS HELD VALID AND APPLICABLE, NOTWITHSTANDING VOTER'S DIRECTIONS TO CANCEL FIRST BALLOT.—Where the By-Laws of a coöperative association, incorporated under Civ. Code, 1922, § 3403, authorized the directors to determine the election rules, a rule, adopted by the directors, that, if a man voted twice, the ballot cast first should be counted, *held* valid and applicable to a case where voters voted for one candidate for director, and later filed other ballots, containing written directions to cancel the first ballots and count their votes for the last candidate designated.

Before DE VORE, J., Richland, October, 1923. Affirmed.

Action by W. C. Davis against South Carolina Cotton Growers Co-operative Association and L. D. Jennings. Judgment for defendants and plaintiff appeals.

The Circuit decree was as follows:

This action was brought to try title to the office of director in the defendant South Carolina Cotton Growers' Co-operative Association, a corporation organized under the Act of the Legislature approved March 29, 1921, now incorporated in the Code of Laws for 1922 as Section 3403 *et seq.* Jury trial was waived by all parties, and the case came on to be heard before me upon an agreed statement

of facts and certain testimony supplementary thereto, at the Fall Term, 1923, of the Court of Common Pleas for Richland County.

The office of director in the defendant corporation is an elective one. I find from the testimony that a primary election is held in the several districts making up the corporation, and that any candidate receiving the majority of votes of such primary under the by-laws becomes confirmed in his office by the vote of the entire association at the annual meeting of its members. In this way each director is in reality elected by the votes of the members of the association residing in his respective district.

I further find as matters of fact that, in pursuance with certain rules promulgated by the board of directors for the conduct of the election, ballots were sent out to voters residing in the ninth district on the 24th day of April, 1923, and that the rules governing such election provided that such ballot should be returned to headquarters of the association at Columbia, S. C., on or before 5:30 p. m. on May 7, 1923. In this election the plaintiff, W. C. Davis, and the defendant, L. D. Jennings, together with one C. J. Jackson, were candidates for the office of director.

Before the time for returning these ballots, a meeting of the board of directors of the association was duly held on May 2, 1923, and at this meeting it was moved and carried "that, in counting the ballots for the election, the tellers ascertain as they go along if a man has voted twice, and that they endeavor to ascertain from the postmark on the envelope which ballot was cast first, and that the ballot which was cast first be counted."

On the 7th of May the directors again met for the purpose of announcing the result of the election. There seemed to have been some irregularities in connection with the voting. A contest was made. The directors in disposing of this contest passed the following resolution:

Davis *v.* S. C. Cotton Growers Co-op. Assn. *et al.* 355

353]                    .                    Fall Term, 1923

"Dr. J. B. Johnson moved that, because of unintentional irregularities, the board order a new election in the eighth and ninth district, and that the official ballot as sent out by headquarters must be used, and that the rules governing the conduct of the first primary be enforced." ·

In the second primary, the plaintiff, W. C. Davis, and the defendant, L. D. Jennings, were the sole candidates. The ballots for this election were sent out on May 14th, and were to be returned on or before 6 o'clock on May 24th, at which time the board of directors again met for the purpose of announcing the result of the election. At this meeting, before the counting of the ballots commenced, the following motion was adopted: "Mr. Evans moved that the same rule prevail as prevailed in the first election, and that the first ballot received from a member in this election be counted."

I find that the voting was done by ballot, the members mailing in their ballots to the association headquarters, where they were received by the secretary, and, without being opened, deposited in a locked ballot box, where they remained until the board of directors met and opened the box for the purpose of counting and tabulating the votes. This method of voting is one authorized by the by-laws of the association and the rules made by the directors in pursuance therewith. On the occasion in question, when the ballot box was opened, it was found to contain 11 votes for W. C. Davis, to each of which was attached a sheet of paper bearing the following statement signed by the voter: "Whereas, I have heretofore voted for L. D. Jennings in his race with W. C. Davis for director of the Cotton Growers' Association under a misapprehension, I hereby direct the canvassers to cancel such ballot and count the ballot attached for W. C. Davis."

Inasmuch as each of these 11 voters had previously voted for L. D. Jennings, which votes had been received by the

association and deposited in the ballot box prior to the receipt of the 11 votes above described, the board of directors disregarded the written instructions attached to said 11 ballots and threw them out, counting the first ballots cast by each of these voters for L. D. Jennings. Upon this count it appeared that L. D. Jennings received 261 votes and W. C. Davis received 257 votes, and the board declared L. D. Jennings the duly elected director of the association, and has ever since been maintaining him in such office, the duties of which the said L. D. Jennings has performed.

On this state of facts it is the contention of the plaintiff, W. C. Davis, that the 11 voters above referred to had the right to withdraw their votes for L. D. Jennings, and vote instead for the plaintiff, at any time before the result of the election was declared, unless there was in existence at the time some valid by-law or proper regulation of the association which forbids such conduct. It is further the contention of the plaintiff that the several resolutions heretofore quoted, if valid, should not be construed to meet a situation of this kind, but should be held merely to furnish a rule for counting votes in case of unintentional duplication, and it is further the contention of the plaintiff that, even should the resolution referred to be construed so as to prevent a member from withdrawing his vote, such resolution applied solely to the first primary and not the second primary.

It is plain, therefore, that the crucial question in this case is as to the validity and applicability of the resolutions as quoted. It has not been pointed out to me wherein such resolutions are contrary to either the law of the state or the charter or by-laws of the corporation. On the other hand, the by-laws of the corporation authorizes its board of directors to determine the rules of conduct of primary elections, and the conditions and circumstances under which ballots shall be received, and to make any rules and regulations to

control the acceptance of ballots at such elections. In my opinion, this language is sufficiently comprehensive to enable the directors to pass the resolutions in question, and I hold that such resolutions, when duly passed, became valid and binding upon the membership of the association.

It appears from the testimony in this case that such resolutions were neither arbitrary nor unreasonable, that one of the irregularities complained of at the first election was the fact that a number of members had been induced to send in second ballots, and that it was to regulate this practice that the resolutions were passed. The Court finds this a reasonable regulation, and if the question of the construction of these resolutions was presented to this Court as a new proposition, the Court would so construe it. But the facts of the case show that the corporation, acting through its directors, has construed these resolutions to apply to the situation presented in this case, and to prevent a voter from withdrawing and changing his vote when it has once been received and duly deposited in the ballot box. This practical construction is one which the Court should adopt, even though the resolutions themselves were ambiguous.

In the first volume of Fletcher's Encyclopedia of Corporations, at page 1020, it is stated: "Ordinarily the practical construction of an ambiguous by-law by the corporation, if such construction is not one which will for any reason render the by-law invalid, will control." In the same volume, at page 1101, is found: "By-laws regulating in a reasonable manner, the method of voting at corporate elections will be sustained, if their provisions do not conflict with the charter or statute." The Court, therefore, holds that the resolution of May 2d, above quoted, was broad enough in its terms to prevent a voter from withdrawing his ballot and substituting another therefor, after such ballot had been duly received by the corporation and deposited in the ballot box.

But the plaintiff contends that the resolution of May 2d applied by its terms only to the election then in progress. Even were this true, the Court finds that the resolutions of May 7th and May 24th, which are quoted above, had the legal effect of making applicable to the second primary all rules and regulations which were in force for the first primary. Even in the absence of such resolutions, the Court will hold that it must be implied that the second election, under the circumstances herein outlined, should be governed by the same rules and regulations as obtained at the first; but any doubt on the subject is removed by the express terms of the resolutions of May 7th and May 24th. The Court is therefore of the opinion that the board of directors of the defendant corporation acted properly and in accordance with the duly promulgated rules of election in disregarding the 11 votes which brought about this controversy.

It is therefore ordered, adjudged, and decreed that the complaint of the plaintiff herein be dismissed, with costs, and the defendant L. D. Jennings is the duly elected director of the South Carolina Cotton Growers' Co-operative Association.

*Mr. R. B. Herbert,* for appellant, cites: *Organization of association, Code, 1922, Sec.* 3404-31. *Stockholder may change his vote before result is announced:* 3 Fletcher Enc. Corp., 2768; C. J., 14-A p. 57; 131 Pac., 335; 64 Mo. App., 225; 106 S. C., 131.

*Messrs. Douglas McKay* and *Harby, Nash & Hodges* for respondent: *Construction placed on resolution by the corporation will be followed:* 1 Fletcher Enc. Corp., 1020.

February 9, 1924.

The opinion of the Court was delivered by Mr. Justice Cothran.

The decree of the Circuit Judge is affirmed, for the reasons stated by him.

MESSRS. JUSTICES WATTS, FRASER and MARION concur.

MR. CHIEF JUSTICE GARY did not participate.

---

## 11381

### BLACK v. HARMAN

#### (120 S. E., 705)

1. TRUSTS—NO MERGER AND STATUTE DOES NOT EXECUTE TRUST WHERE LIFE BENEFICIARY TRUSTEE HAS DUTIES TO PERFORM.—Under a devise of realty to testator's daughter "to have and to hold to the use of herself and her children during her life, and then to her children absolutely, share and share alike," *held*, that there was no merger of the life estate of the daughter, and the equitable estates of the daughter and her children and the trust was not executed by Civ. Code 1922, § 5450, as the daughter had discretionary duties to perform.

2. TRUSTS—USE NOT EXECUTED; TRUSTEE HAVING ACTIVE DUTY.—A use cannot be executed if there is a duty to be performed by Trustee.

Before RICE, J., Newberry, December, 1922.   Reversed.

Action by Francis C. Black against Harriet F. Harman and others.   From an order overruling demurrer to complaint the named defendant appeals.

*Messrs. Eugene S. Blease* and *Dominick & Workman,* for appellants, cite: *In construing will intention should be ascertained:* 9 S. C., 229. *Estate of Harriet F. Harman and her children under will:* 66 S. C., 155; 107 S. C., 265; 91 S. C., 404; 87 S. C., 55; 72 S. C., 179; 79 S. C., 551; 104 S. C., 95; 46 S. C., 522; 27 S. C., 514. *Legal title of each child remained in such child during his or her natural life:* 1 Hill 413; 36 S. C., 365; 116 S. E., 10. *If statute was executed life tenant and her children became tenants in common:* 46 S. C., 522; 27 S. C., 514. *And it became subject to partition among them:* 3 Code, 1922, Sec. 5292; 68 S. C., 478. *Trust arises by operation of law and is not testamentary:* 39 Cyc., 34, 169; 15 S. C., 164.

24—S. C. R., 127.