577 S.E.2d 482

**Jimmie D. McMILLAN, Respondent,**

**v.**

**GOLD KIST, INC., Appellant.**

**No. 3593.**

Court of Appeals of South Carolina.

Heard Dec. 11, 2002.

Decided Jan. 27, 2003.

Rehearing Denied March 20, 2003.

Joseph Gregory Studemeyer, of Columbia; for Appellant.

Clyde A. Eltzroth, Jr., and John E. Parker, of Hampton; for Respondent.

HEARN, C.J.:

Gold Kist, Inc. appeals from two circuit court orders finding it was prohibited from enforcing an arbitration agreement adopted by an amendment to its bylaws. Gold Kist argues that by signing a membership agreement, McMillan was bound by Gold Kist's subsequently adopted arbitration policy. We agree and reverse.

## FACTS

Gold Kist is an agricultural cooperative organized under and governed by the Georgia Cooperative Marketing Act and the Georgia Non–Profit Code. Gold Kist's membership consists of farmers, and the members elect the Board of Directors, which governs the cooperative. Gold Kist maintained a retail facility in Allendale, South Carolina, which sold farming supplies until October 13, 1998. The stock of the retail facility was delivered from out of state.

McMillan, a farmer, applied for membership with Gold Kist on January 24, 1986, by signing a "Membership, Marketing, And/Or Purchasing Agreement of Gold Kist." The Agreement provided that by signing up for a membership, new members agreed to abide by the bylaws of Gold Kist then in effect as well as any bylaws the board of directors adopted in the future.

On April 4, 1991, McMillan signed an acknowledgment that he received a copy of his membership agreement with Gold Kist. The agreement provided, among other things, that by signing a membership agreement:

> [t]he member will be eligible for the benefits of membership and also that the member will honor and abide by the rules of membership as contained in the cooperative's Articles of Incorporation, By–Laws, and Board of Directors' policies, *all of which may be changed from time to time.*

(emphasis added).

Although no arbitration policy had previously existed, Gold Kist's Board of Directors adopted an arbitration policy on October 28, 1993. The policy stated that any disputes between Gold Kist and its members were subject to arbitration governed by the Federal Arbitration Act and the Commercial Arbitration Rules of the American Arbitration Association. The policy also provided that it did not apply to "any purchases or sales between Gold Kist and members, or any contracts for such purchases or sales, if the transactions were completed or the contracts executed prior to the effective date of this policy." The policy became effective January 1, 1994.

On the same date, Gold Kist amended its bylaws to reflect the new arbitration policy. The amendment to the bylaws provided:

Section 7. **Disputes Between Gold Kist and Members: Remedies.**

a) *Arbitration.* Gold Kist and members will submit to binding arbitration all disputes between the parties, whether governed by federal, state, or international contract law, tort law, statute or treaty, and irrespective of the form of relief sought, relating to or arising out of matters of a type declared by Gold Kist's Board of Directors before the dispute arises to be of a type covered by Gold Kist's arbitration policy. All such arbitrations shall be according to rules and procedures adopted from time to time by Gold Kist's Board of Directors.

The board of directors amended the bylaws again on October 25, 1996, and the arbitration section included in the 1993 amendment was also included in the 1996 amendment.

McMillan purchased lime for use on his farm from Gold Kist's Allendale, South Carolina, store in 1996 and 1997. The lime originated in Tennessee. McMillan apparently failed to pay for the products purchased from Gold Kist.

On November 27, 2000, Gold Kist sent McMillan a demand for arbitration, alleging that McMillan owed it $57,337.40. On January 30, 2001, McMillan filed two actions in circuit court against Gold Kist: (1) an action seeking damages for $75,000 in losses allegedly caused by defective lime sold by Gold Kist or negligently applied by Gold Kist, resulting in damage to his farm and decreased crop yield; and (2) an action seeking a declaratory judgment that McMillan was not required to arbitrate his dispute with Gold Kist. He also sought a restraining order prohibiting Gold Kist from proceeding with the arbitration. Gold Kist denied McMillan's allegations and filed motions to stay McMillan's action for damages and to compel arbitration.

Following a hearing, the circuit court issued two orders. Regarding Gold Kist's motion to stay McMillan's action for damages and to compel arbitration, the circuit court found that Gold Kist had failed to prove McMillan was aware of the arbitration policy in the bylaws or that he had agreed to be

subject to the amendment. Looking to the section of the Georgia Code of Laws governing agricultural cooperatives, the circuit court noted that section 2–10–86 did not authorize bylaws mandating arbitration. The circuit court determined that because Gold Kist failed to show McMillan consented to change the terms of the original membership agreement to include a mandatory arbitration clause, the arbitration policy did not apply to McMillan. The court denied Gold Kist's motion to stay damages and to compel arbitration.

On May 24, 2001, the circuit court issued an order ruling on McMillan's declaratory judgment action. Relying on the same considerations from the previous order, the circuit court determined the arbitration policy was not binding upon McMillan. Gold Kist appeals from both orders.

## STANDARD OF REVIEW

Where, as here, the existence of a membership agreement is not in question, the construction of the agreement is a matter of law. *See Watts v. Monarch Builders, Inc.,* 272 S.C. 517, 252 S.E.2d 889 (1979) (holding that in the absence of fraud, the construction of a clear and unambiguous contract is a matter of law). If the membership agreement is construed to contain an arbitration clause, whether McMillan's claims are subject to arbitration is an "issue for judicial determination, unless the parties provide otherwise." *Zabinski v. Bright Acres Assocs.,* 346 S.C. 580, 596, 553 S.E.2d 110, 118 (2001). "Determinations of arbitrability are subject to de novo review." *Stokes v. Metropolitan Life Ins. Co.,* 351 S.C. 606, 609, 571 S.E.2d 711, 713 (Ct.App.2002) (citing *U.S. v. Bankers Ins. Co.,* 245 F.3d 315, 319 (4th Cir.2001)); *see also General Equip. & Supp. Co. v. Keller Rigging & Constr., SC, Inc.,* 344 S.C. 553, 556, 544 S.E.2d 643, 645 (Ct.App.2001) ("[T]he determination of whether a party waived its right to arbitrate is a legal conclusion subject to de novo review."). Nevertheless, a circuit court's factual findings will not be reversed on appeal if there is any evidence reasonably supporting the findings. *Liberty Builders, Inc. v. Horton,* 336 S.C. 658, 664–65, 521 S.E.2d 749, 753 (Ct.App.1999).

## LAW/ANALYSIS

■ Gold Kist argues the circuit court erred in finding McMillan was not bound by the amendment of the bylaws, and thereby finding the arbitration clause inapplicable to McMillan. We agree and reverse.

### I. Validity of Gold Kist's Arbitration Policy

■ Initially, we note that South Carolina law generally favors arbitration. *See Cox v. Woodmen of World Ins. Co.*, 347 S.C. 460, 464, 556 S.E.2d 397, 399 (Ct.App.2001) (citing *Heffner v. Destiny, Inc.*, 321 S.C. 536, 537, 471 S.E.2d 135, 136 (1995)). "There is a strong presumption in favor of the validity of arbitration agreements because of the strong policy favoring arbitration." *Towles v. United Healthcare Corp.*, 338 S.C. 29, 37, 524 S.E.2d 839, 843–44 (Ct.App.1999).

### A. Amending Bylaws To Include an Arbitration Clause

First, we consider whether Gold Kist could amend its bylaws to include an arbitration policy. Because Gold Kist is an agricultural cooperative formed in Georgia, actions it may take are governed by the Georgia Cooperative Marketing Act. Section 2–10–86 of the Act requires a cooperative to adopt bylaws within thirty days of incorporation. Ga.Code Ann. § 2–10–86(a) (Supp.2001). However, the section does not specifically list arbitration clauses. Georgia law also provides that "[i]t is a general rule that a corporation may enact any bylaw for its internal management so long as such bylaws are not contrary to its charter, a controlling statute, its articles of incorporation, or violative of any general law or public policy." *Booker v. First Federal Sav. and Loan Ass'n*, 215 Ga. 277, 110 S.E.2d 360, 362 (1959).

The Georgia Court of Appeals recently addressed issues very similar to the present action in *Rushing v. Gold Kist, Inc.*, 256 Ga.App. 115, 567 S.E.2d 384 (2002). There, Gold Kist and a collection company filed a motion to compel Rushing, a farming cooperative member, to arbitrate based on his default on a note. As in the present case, the membership agreement provided that Rushing agreed to be bound by future amendments to the bylaws, and it was signed by Rushing several years before Gold Kist adopted the amend-

ment to the bylaws mandating arbitration. Although Rushing argued the arbitration clause was not binding upon him because he did not agree to it, the court held Rushing agreed to be bound by future amendments to the bylaws when he signed the membership agreement, thus agreeing to bind himself to arbitration. *Id.* at 387–88.

We agree with this result [1] and find the circuit court erred in determining that Gold Kist's arbitration clause was not validly adopted into its bylaws. In making its determination, the circuit court relied heavily on the fact that arbitration clauses are not specifically listed under section 2–10–86(a) of the Georgia Code, which addresses cooperatives' bylaws. However, this silence also indicates that Georgia law does not specifically *forbid* agricultural cooperatives from having arbitration clauses in their bylaws or from amending their bylaws to include such clauses. Therefore, where, as here, the arbitration clause is not contrary to the cooperative's charter, its articles of incorporation, a controlling statute, or public policy, the cooperative can amend its bylaws to include such a clause. *See Booker,* 110 S.E.2d at 362.

## B. Governing Law

Next, we address whether Gold Kist's arbitration clause is governed by the requirements of the South Carolina Arbitration Act or the Federal Arbitration Act.

The South Carolina Arbitration Act delineates specific notice requirements for arbitration clauses. The Act provides that "[n]otice that a contract is subject to arbitration pursuant to this chapter shall be typed in underlined capital letters, or rubber-stamped prominently, on the first page of the contract and unless such notice is displayed thereon the contract shall not be subject to arbitration." S.C.Code Ann. § 15–48–10(a) (Supp.2001). This section is strictly construed and failure to comply with its terms renders the arbitration clause unenforceable. *See Zabinski,* 346 S.C. at 588, 553 S.E.2d at 114

---

1. Whether or not Georgia law allows cooperatives to amend their bylaws to include an arbitration policy was not precisely argued in *Rushing;* however, the case's holding implies that such amendments are valid. *Id.*

(finding that this section of the South Carolina Arbitration Act must be strictly construed).

However, the Federal Arbitration Act (FAA) preempts state arbitration law in some instances. "Unless the parties have contracted to the contrary, the FAA applies in federal or state court to any arbitration agreement regarding a transaction that in fact involves interstate commerce, regardless of whether or not the parties contemplated an interstate transaction." *Munoz v. Green Tree Fin. Corp.*, 343 S.C. 531, 538, 542 S.E.2d 360, 363 (2001); *Cox*, 347 S.C. at 464, 556 S.E.2d at 400. Section 2 of the FAA provides that a written provision in a contract requiring parties to submit to arbitration arising out of controversies surrounding the contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Thus, the FAA does not impose specific procedures regarding how notice of arbitration must be given in contracts.

The parties do not dispute that the arbitration clause failed to meet the technical requirements of South Carolina law in that the notice of arbitration was not in bold letters or stamped on the first page of the contract. However, because evidence in the record shows that some of the stock for Gold Kist's store came from Tennessee,[2] interstate commerce was involved. Thus, the FAA, which does not require special fonts or lettering in the arbitration clause, preempts state law in this instance.

We therefore hold that Gold Kist was permitted to amend its bylaws to include an arbitration clause and that the arbitration clause is valid under the FAA.

---

2. McMillan argues Gold Kist failed to establish that the lime originated outside the state because the affidavit attached to Gold Kist's motion to compel arbitration only alleged that the lime "would have originated in Tennessee"; it did not allege the lime *did* originate in Tennessee. However, the affidavit also states that Gold Kist's store in Allendale, South Carolina, "sold ... farm production supplies to local farmers, which were delivered to the facility from out of state, either by tractor trailer or by rail." Therefore, we find the affidavit sufficiently establishes that the transaction between McMillan and Gold Kist involved interstate commerce. *See generally* BLACK'S LAW DICTIONARY 263 (7th ed.1999) (defining interstate commerce as "[t]rade and other business activities between those located in different states").

## II. Applicability of the Arbitration Agreement to McMillan

Finally, we consider whether the arbitration clause was binding upon McMillan. As a condition of membership, McMillan agreed that future amendments to the bylaws would be binding on him. We find that this agreement did in fact bind McMillan to the subsequent amendment requiring arbitration. *See, e.g., Davis v. South Carolina Cotton Growers' Co-op. Ass'n,* 127 S.C. 353, 358, 121 S.E. 260, 261 (1924) (finding that where bylaws allowed the director to determine the voting procedures, a subsequent resolution regarding voting procedures was thereafter binding on all members); 18 Am.Jur.2d *Cooperative Associations* § 14 (1985) ("A member of a cooperative association may enter into a contract to be bound by articles, bylaws, rules, and regulations of the association theretofore or thereafter passed by the association ... [and it is] binding upon the association and its members."). Although McMillan did not specifically consent to the adoption of the arbitration policy into the bylaws, his agreement in his membership application to confer the power to amend bylaws upon the directors amounted to consent to the amendment and did not affect the substance of his contract with Gold Kist. *See Rushing,* 567 S.E.2d at 387–88. Further, although there is no evidence in the record that McMillan was given actual notice of the amendment of the bylaws to include an arbitration policy, he is still bound by the amendment because it did not affect the validity of his contract with Gold Kist. *Roach v. Farmers' Mut. Ins. Ass'n of Oconee Co.,* 102 S.C. 478, 481, 86 S.E. 950, 952 (1915) (stating that a member is bound by amendments to or changes in the bylaws even if the member had no notice of the changes except when the amendments affect the terms of the contract).

McMillan's membership contract with Gold Kist provided, in part, that he would provide agricultural products to Gold Kist for marketing purposes and that he would purchase equipment or fertilizer from Gold Kist. The terms of this contract were not affected by the subsequent adoption of the arbitration clause. Since arbitration is favored, we find the circuit court erred in holding Gold Kist's arbitration policy was not applicable to McMillan.

## CONCLUSION

Because the circuit court erred in finding the arbitration policy was not binding on McMillan, we **REVERSE**.

CURETON and ANDERSON, JJ., concur.