**Rita MARTIN, Plaintiff,**

v.

**SCI MANAGEMENT L.P.; SCI Funeral Services of New York, Inc.; and Peter D'Arienzo, Defendants.**

**No. 03 CIV. 5650(JGK).**

United States District Court, S.D. New York.

Dec. 22, 2003.

Jason J. Rozger, Beranbaum, Menken & Ben–Asher, New York City, for Plaintiff.

## OPINION and ORDER

KOELTL, District Judge.

The plaintiff, Rita Martin, brings this employment discrimination action against her former employers, SCI Management L.P. and SCI Funeral Services of New York, Inc., and against her former supervisor, Peter D'Arienzo. The plaintiff alleges that the defendants discriminated against her in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.*, the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 *et seq.*, the New York Human Rights Law, N.Y. Exec. L. § 290 *et seq.*, and the Westchester County Human Rights Law.

The defendants have moved pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, to compel arbitration in accordance with an arbitration agreement included in the employment agreement executed by the plaintiff. For the reasons given below, the motion is **granted**.

### I.

The facts as alleged in the Complaint are as follows. The plaintiff resides in Westchester County, New York. (Compl.¶ 5.) SCI Management, L.P., a corporation organized under the laws of Texas, owns and operates funeral homes in New York through its subsidiary, SCI Funeral Services of New York, Inc. (collectively, "SCI"). (Compl.¶¶ 6–7.) The funeral homes owned and operated by SCI do business under various names, including Whalen & Ball Funeral Home and Edwin L. Bennett Funeral Home. (Compl.¶ 7.) Peter D'Arienzo is employed

by SCI and was the plaintiff's supervisor.[1] (Compl.¶ 10.)

The plaintiff was employed by SCI as a licensed funeral director from July 1999 until her termination on February 1, 2003. (Compl.¶ 11.) The plaintiff alleges that at the beginning of her employment she was sexually harassed by a co-worker and fellow funeral director, Anthony Guarino, who allegedly repeatedly phoned and visited the plaintiff at her workplace, inquired about her personal life, and refused to leave her alone despite the plaintiff's requests that he do so. (Compl.¶¶ 12–13.) The plaintiff alleges that she filed a complaint with SCI management on December 3, 1999 concerning the alleged sexual harassment by Guarino, but that SCI allowed the harassment to continue. (Compl.¶¶ 14–15.) In April 2000, the plaintiff made a second complaint concerning the alleged sexual harassment, this time to D'Arienzo. (Compl.¶ 15.) D'Arienzo is alleged to have told Guarino not to go into the same building as the plaintiff, but Guarino allegedly ignored the warning and continued to harass the plaintiff until October 2000. (Compl.¶¶ 16–17.) The plaintiff alleges, upon information and belief, that Guarino had harassed another SCI employee prior to his harassment of the plaintiff, and that the defendants were aware of this harassment. (Compl.¶ 18.)

From July 1999 to September 2002, the plaintiff was assigned to the Bennett Funeral Home in Scarsdale, New York. (Compl.¶ 20.) Her duties included arranging and directing funerals, which involved meeting with families, planning ceremonies, public relations, staff scheduling, and sales of such items as caskets and flower arrangements. (Compl.¶ 21.) The plaintiff claims that she was consistently ranked

---

1. The plaintiff alleges that D'Arienzo is an "employer" for purposes of the FMLA. 29 U.S.C. § 2611(4)(A)(ii)(I).

among the top SCI funeral directors in various categories, and that her sales of flowers and inscriptions augmented her regular salary by approximately $5,000 per year. (Compl.¶ 22.) The plaintiff also alleges that she had the opportunity, but not the obligation, to work overtime by retrieving the bodies of individuals who died after regular work hours. (Compl.¶ 23.) She claims that if no SCI funeral director assigned to the Bennett Funeral Home opted for such overtime work when it arose, the work would be given to outside funeral directors-a practice known as "trade work." (Compl.¶ 24.)

As of October 1, 2002, the plaintiff took unpaid FMLA leave for the birth of her first child. (Compl.¶ 25.) The plaintiff alleges that she attended a meeting on December 4, 2002 with D'Arienzo and Marty Ball, another SCI employee, to discuss her return to work. (Compl.¶ 26.) At that meeting, the plaintiff was allegedly informed that she would be immediately transferred to Whalen & Ball Funeral Home, that her duties there would consist mainly of retrieving and embalming bodies, and that she would no longer have a job with SCI if she refused to accept this transfer. (Compl.¶¶ 27–28.) The plaintiff alleges that this assignment was less desirable than her previous assignment at Bennett, in part because she would no longer be arranging funerals and would have less occasion to earn extra money on commissions from flower and inscription sales. (Compl.¶¶ 29–30.) The plaintiff further alleges that the new assignment would require her to be "on call" on certain nights, and that she would be required to retrieve bodies at night, without the option of referring such retrievals to "trade work." (Compl.¶ 31.) The plaintiff allegedly protested these changes in her job requirements while at the meeting with D'Arienzo and Ball, but was told that she would no longer have a job if she refused the transfer. (Compl.¶ 32.) The plaintiff claims

that the changes in her job duties were intended to harass and demean her in retaliation for her assertion of rights under the FMLA and Title VII, and to force her to resign. (Compl.¶ 33.)

The plaintiff also alleges, on information and belief, that Guarino was appointed the general manager of the Bennett Funeral Home while the plaintiff was on maternity leave. (Compl.¶ 36.) The plaintiff alleges that she was told by SCI management that the only reason she was transferred to Whalen & Ball Funeral Home was Guarino's promotion to general manager of Bennett Funeral Home. (Compl.¶ 39.) On December 24, 2002, the plaintiff allegedly informed the defendants through counsel that she opposed the transfer and the changes in her job duties and that she considered these changes to be violations of the FMLA. (Compl.¶ 40.)

In January 2003, at the conclusion of the plaintiff's FMLA maternity leave, the plaintiff returned to work and reported to the Whalen & Ball Funeral Home. (Compl.¶ 34.) The plaintiff alleges that she informed D'Arienzo that her child care obligations prevented her from working mandatory overtime, but that D'Arienzo repeatedly informed her, over a period of approximately four weeks, that she would be terminated if she did not work overtime as required. (Compl.¶ 35.) The plaintiff alleges that she was terminated on February 1, 2003, and that the reason provided for her discharge was her inability to work mandatory overtime. (Compl.¶ 37.)

The plaintiff alleges that on May 9, 2001, she filed a charge of discrimination with the New York State Division of Human Rights ("NYSDHR") and with the United States Equal Employment Opportunity Commission ("EEOC"). (Compl.¶ 42.) On June 6, 2003, the NYSDHR issued an administrative convenience dismissal, and on June 11, 2003, the EEOC issued a right-to-

sue letter to the plaintiff. (Compl.¶ 43.) The plaintiff alleges that at times during her employment with SCI she worked in excess of forty hours per week, but that she was not paid at a rate of 1.5 times her hourly rate for that overtime. (Compl.¶¶ 44–45.)

When the plaintiff was hired by SCI in July 1999, she signed an employment agreement entitled "Principles of Employment & Arbitration Procedures" ("Agreement"). (*See* Agreement attached as Ex. A to Affidavit of Peter D'Arienzo dated October 2003 ("D'Arienzo Aff.").) The plaintiff signed the Agreement on July 18, 1999, and it was signed by D'Arienzo on behalf of SCI on July 20, 1999.

Under the heading, "Matters Subject To Arbitration," the Agreement provides in pertinent part:

Employee and [SCI] agree that, ... except as otherwise provided by law, all disputes relating to any aspect of Employee's employment with [SCI] shall be resolved by binding arbitration. This includes, but is not limited to, any claims against [SCI], its affiliates or their respective officers, directors, employees, or agents for breach of contract, wrongful discharge, discrimination, harassment, defamation, misrepresentation, and emotional distress, as well as any disputes pertaining to the meaning or effect of this Agreement. The arbitration shall be conducted in accordance with the procedures attached hereto as Exhibit "A." ...

(Agreement ¶ 1.)

The Agreement provides that "[a]n arbitrator shall be selected by mutual agreement of the parties," and that if the parties are unable to agree on an arbitrator, then each party shall select one arbitrator and those two arbitrators shall select a third. (Ex. A to Agreement ¶ 1.) The Agreement further provides:

Except as otherwise provided herein, the arbitration proceedings shall be conducted in accordance with the statutes, rules or regulations governing arbitrations in the state in which Employee is or most recently was employed by [SCI]. In the absence of such statutes, rules or regulations, the arbitration proceedings shall be conducted in accordance with the employment arbitration rules of the American Arbitration Association ("AAA") ....

(Ex. A to Agreement ¶ 4.) The Agreement also provides that "[i]n resolving claims governed by this agreement, the arbitrator shall apply the laws of the state in which the Employee is or most recently was employed by [SCI], and/or federal law, if applicable." (Ex. A to Agreement ¶ 6.) Finally, the Agreement provides that "[e]ach party may retain legal counsel and shall pay its own costs and attorneys' fees, regardless of the outcome of the arbitration; provided however, that the arbitrator may award attorneys' fees to the prevailing party when expressly authorized to do so." (Agreement ¶ 4.)

Rather than follow the arbitration procedures specified in the Agreement, the plaintiff filed this action asserting seven causes of action. The first cause of action asserts a violation of the FMLA as a result of the defendants' failure to restore her to her pre-maternity leave position. The second cause of action asserts that the defendants terminated the plaintiff in retaliation for her assertion of rights pursuant to the FMLA. The third cause of action asserts that the plaintiff was subjected to a sexually hostile work environment in violation of Title VII. The fourth cause of action asserts a claim of retaliation under Title VII. The fifth and sixth causes of action assert discrimination claims pursuant to the New York State and the Westchester County Human Rights Laws. Finally, the seventh cause of action asserts that the defendants violated the FLSA by failing to pay her

overtime wages for the hours she worked in excess of forty hours per week.

## II.

■ The defendants move pursuant to the FAA to compel the plaintiff to proceed with arbitration in accordance with the provisions of the Agreement.

As the Court of Appeals for the Second Circuit has recently noted:

> The Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.* (1988), requires the federal courts to enforce arbitration agreements, reflecting Congress' recognition that arbitration is to be encouraged as a means of reducing the costs and delays associated with litigation.

*Vera v. Saks & Co.,* 335 F.3d 109, 116 (2d Cir.2003) (per curiam) (quoting *Deloitte Noraudit A/S v. Deloitte Haskins & Sells, U.S.,* 9 F.3d 1060, 1063 (2d Cir.1993)). The relevant section of the FAA states:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

■ The Court of Appeals has instructed that courts must address four factors in determining whether to stay a proceeding pending arbitration:

> [F]irst, [the Court] must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the case are arbitrable, it must then determine whether to stay the balance of the proceedings pending arbitration.

*Genesco, Inc. v. T. Kakiuchi & Co.,* 815 F.2d 840, 844 (2d Cir.1987) (internal citations omitted).

The parties do not dispute that the plaintiff's claims are arbitrable under the standard outlined in *Genesco.* First, the plaintiff does not dispute that by signing the Agreement she expressly agreed to comply with the arbitration procedures outlined therein. *See, e.g., Genesco,* 815 F.2d at 845–46. Second, the arbitration clause in the Agreement is a broad one, encompassing "all disputes relating to any aspect of Employee's employment," which includes but is not limited to claims of wrongful discharge, discrimination, and harassment. *See Oldroyd v. Elmira Sav. Bank, FSB,* 134 F.3d 72, 76 (2d Cir.1998) (concluding that similarly worded clause was "precisely the kind of broad arbitration clause that justifies a presumption of arbitrability"). Third, there is no indication that Congress intended any of the plaintiff's claims to be nonarbitrable. *See Desiderio v. Nat'l Ass'n of Secs. Dealers, Inc.,* 191 F.3d 198, 204–06 (2d Cir.1999) (concluding that Title VII claims are generally arbitrable); *Stewart v. Paul, Hastings, Janofsky & Walker,* 201 F.Supp.2d 291, 294 (S.D.N.Y.2002) (finding FMLA claim arbitrable); *Adkins v. Labor Ready, Inc.,* 303 F.3d 496, 506 (4th Cir.2002) (holding that FLSA claims are arbitrable); *Fletcher v. Kidder, Peabody & Co.,* 81 N.Y.2d 623, 601 N.Y.S.2d 686, 619 N.E.2d 998, 1005–06 (1993) (holding that discrimination claims brought pursuant to state and local human rights laws are arbitrable). Because all of the plaintiff's claims are arbitrable, it is not necessary to determine whether any nonarbitrable claims

should be stayed pending the outcome of the arbitration.

The plaintiff contends, however, that the arbitration agreement is unenforceable for three reasons. The plaintiff argues that the arbitration proceeding required by the Agreement would prevent the plaintiff from exercising her federal statutory rights, because (1) the plaintiff could be responsible for the costs of the arbitration; (2) the plaintiff would be entitled to little or no discovery in arbitration; and (3) the plaintiff would not be entitled to recover punitive damages. None of these arguments has merit.

■ The plaintiff is correct that in some cases significant arbitration costs could preclude a litigant from effectively vindicating her federal statutory rights in an arbitral forum. *See Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 90, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000). However, the party seeking to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive "bears the burden of showing the likelihood of incurring such costs." *Id.* at 92, 121 S.Ct. 513. In this case, the plaintiff can show no likelihood that she will incur such considerable arbitration costs that she will be prevented from vindicating her statutory rights. SCI has represented to the plaintiff and to the Court that it will pay up front for the costs incurred in arbitrating the plaintiff's claims.[2] (D'Arienzo Aff. ¶ 4.) Therefore, the plaintiff's argument that the arbitration agreement is unenforceable because she could face considerable costs in arbitration is unavailing.

■ The plaintiff also contends that she will be prevented from exercising her statutory rights because, under the Agreement, she will effectively have no right to discovery in the arbitration proceeding.[3] However, the plaintiff greatly underestimates the discovery that is contemplated by the Agreement and that will be available in arbitration. In fact, the defendants correctly observe that a right to discovery would appropriately be read into the Agreement insofar as discovery is necessary to enable the plaintiff to vindicate her statutory rights. Moreover, the defendants note that the Agreement refers to the applicable rules of the American Arbitration Association ("AAA"), which provide for discovery-an indication at the very least that the defendants did not intend to preclude all discovery from the arbitration process. Finally, in their motion papers submitted to the Court, the defendants "reiterate th[e] position" that they "do not object to discovery being had as to the parties' claims and defenses." (Defs.' Reply Mem. at 6.) Given these representations, the plaintiff has not established that the discovery available to her in arbitration will be so minimal that she will not have a fair opportunity to present her claims. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) (concluding that discovery available to plaintiff in arbitration was sufficient to allow fair opportunity to present ADEA claims, even though discovery was less extensive than it would be in federal court); *see also Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 673

---

2. The defendants' representation that they will pay the costs of arbitration moots the plaintiff's related argument that the defendants would have undue leverage in the selection of an arbitrator if she were found responsible for some of the arbitration costs.

3. The plaintiff argues that New York courts will order discovery in aid of arbitration, pursuant to N.Y.C.P.L.R. § 3102(c), only in "extraordinary circumstances." However, this section does not limit the ability of the parties in an arbitration to agree upon the scope of discovery.

& n. 16 (6th Cir.2003) (concluding that limited discovery was not grounds for finding arbitration agreement unenforceable where plaintiff failed to show how discovery restrictions prevented her from presenting her employment discrimination claims); *Great Western Mortgage Corp. v. Peacock*, 110 F.3d 222, 231 n. 37 (3d Cir. 1997) (rejecting plaintiff's claims regarding limited discovery in arbitration and observing that because defendant represented in its appellate brief "that informal discovery *will* be available at arbitration, there appears to be no point at issue here").

[redacted] The plaintiff further argues that the arbitration agreement is unenforceable because it does not allow for punitive damages. The plaintiff contends that the agreement is governed by the law of New York, including the rule announced by the New York Court of Appeals in *Garrity v. Lyle Stuart, Inc.*, 40 N.Y.2d 354, 386 N.Y.S.2d 831, 353 N.E.2d 793 (1976), that the power to award punitive damages is reserved to judicial tribunals and may not be exercised by arbitrators. The argument is unavailing. The Supreme Court has made clear that the FAA preempts the *Garrity* rule unless the parties expressly intend to preclude the arbitrator from awarding punitive damages. *See Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62–64, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995). There is nothing in the Agreement that evinces such an intent by the parties. The choice-of-law provision of the Agreement expressly provides for the application of federal law "if applicable," and for the federal claims at issue in this case federal law would include punitive damages as a possible remedy. Moreover, the defendants maintain that they did not intend the Agreement to preclude an arbitrator's award of punitive damages. The defendants represent that "punitive damages are among the remedies that may be recovered in an arbitration of federal claims" pursuant to the Agreement, and indeed that they "have no objection to an order compelling arbitration on the condition that the panel be empowered to award punitive damages, and liquidated damages, to the extent recoverable under the statutes sued upon."[4] (Defs.' Reply Mem. at 9.)

[redacted] The plaintiff argues that the ambiguities she has identified in the Agreement regarding her potential responsibility for costs, the scope of discovery in arbitration, and the availability of punitive damages should, when read together, render the arbitration agreement unenforceable. She further argues that, in the face of these ambiguities, construing the Agreement in favor of arbitration would result in an improper reformation of the Agreement. However, the Supreme Court made clear twenty years ago that the FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). That policy of contract interpretation—coupled with the defendants' representations that they will pay the costs of arbitration, that they will agree to discovery on the parties' claims and defenses, and that they did not intend the Agreement to preclude an arbitrator's award of punitive damages-dictates that the parties' agreement to arbitrate the plaintiff's claims must be enforced.

4. The plaintiff's argument, made in passing, that liquidated damages under the FLSA would be unavailable for the same reason that punitive damages would be unavailable is similarly unavailing.

## CONCLUSION

For the reasons stated above, the defendants' motion to compel arbitration in accordance with the Agreement is granted. The Complaint is therefore dismissed without prejudice. The Clerk is directed to enter judgment and to close this case.

**SO ORDERED.**