606 S.E.2d 752

CAROLINA CARE PLAN, INC. (f/k/a Physicians
Health Plan, Inc.), Appellant,

v.

UNITED HEALTHCARE SERVICES, INC., United Health
Group, Incorporated, United HealthCare Insurance Co., Ronald
H. Harms, and Edward L. Graves, Respondents.

No. 25879.

Supreme Court of South Carolina.

Heard March 4, 2004.

Filed Oct. 18, 2004.

Rehearing Denied Jan. 6, 2005.

C. Mitchell Brown, Kevin A. Hall, Jeffrey S. Patterson, and Elizabeth H. Campbell, all of Nelson Mullins Riley & Scarborough, of Columbia, for Appellant.

Eliott R. Good, Michael J. Zaretsky, and Michael W. DeWitt, all of Chorpenning Good & Pandora, of Columbus, OH; Gregory S. Coleman, of Well, Gotshal & Manges, LLP, of Austin, TX; Susan P. McWilliams and Angus H. Macaulay, Jr., both of Nexsen, Pruet, Jacobs & Pollard, of Columbia, for Respondents.

Justice WALLER:

The trial court granted respondents' 12(b)(6), SCRCP, motion to dismiss three of appellant's causes of action, granted respondents' motion to compel arbitration, and stayed petitioner's remaining claims pending the outcome of arbitration. Appellants appealed to the Court of Appeals, and this Court certified the case for review pursuant to Rule 204(b), SCACR. We affirm.

## FACTS

Appellant (CCP) is a health maintenance organization (HMO), originally organized as a non-profit South Carolina corporation.[1] Respondents United HealthCare Services (UHS), United Health Group (UHG), and United HealthCare

---

1. The parent company of CCP was originally known as Physicians Heath Plan of South Carolina (PHPSC). At some point the name appears to have been changed to Physicians Health Plan, Inc. (PHP). In 1996, the company was reorganized and CCP was created as a for-profit subsidiary of PHP. For simplicity's sake, we refer to appellant as CCP throughout.

Insurance (UHI), (collectively "United"), provide managed health care services for HMO's.

In 1984, CCP and UHS entered into an Administrative Services Agreement, whereby UHS agreed to provide various services in furtherance of CCP's business as a South Carolina HMO. CCP had few, if any, employees, and outsourced virtually all of its work to United.

In 1996, the parties entered into a new agreement. Section 11.14 of the 1996 Services Agreement stated that:

[a]ny controversy, dispute or claim arising out of or relating to this Agreement or a breach of the Agreement, except as otherwise provided shall be resolved by binding arbitration in accordance with the rules of the American Arbitration Association. Upon such submission, UHS and [CCP] shall each choose one arbitrator and those two arbitrators shall mutually agree on the selection of the third arbitrator. Matters submitted to arbitration shall be determined by a majority vote of the arbitrators, and such decision shall be binding upon the parties. The arbitrators shall have no power to award any punitive or exemplary damages or to vary or ignore the terms of this Agreement and shall be bound by controlling law. It is the intent of the parties that all disputes arising under this Agreement which are not otherwise resolved be resolved by binding arbitration and not by other forms of legal proceedings.

In May 2001, CCP filed suit against UHS, UHG, UHI, Ronald Harms, and Edward Graves. Harms was a former chief financial officer of CCP, and Graves was a former chief executive officer of CCP. Harms and Graves were United employees at the time they served on the CCP board of directors, and are still employed by United. CCP alleged, among other things, that all the defendants failed to cooperate in good faith with CCP to promote CCP's economic interests, failed to properly account for funds that United held as a fiduciary to CCP, and generally put the economic interests of United ahead of CCP.

United moved to dismiss or stay the proceedings and compel arbitration. In response, CCP filed an amended complaint, which included new causes of action for fraud, fraud in the inducement, and fraudulent concealment in the making of

the arbitration clause. CCP also alleged that the arbitration provision was unconscionable and violated South Carolina public policy because it limited discovery and limited CCP's rights and remedies under the South Carolina Unfair Trade Practices Act (SCUTPA).

United moved to dismiss the three causes of action related to the making of the arbitration clause pursuant to Rule 12(b)(6), SCRCP, for failure to state facts sufficient to constitute a cause of action. United argued the arbitration agreement was valid and enforceable, and that the Federal Arbitration Act (FAA) required that all of the claims be submitted to arbitration.

CCP moved to file a second amended complaint, which the trial court granted. However, the trial court then granted United's motion to compel arbitration and to dismiss three of CCP's causes of action related to the making of the arbitration clause.[2] The trial court also ruled that the inclusion of defendants Harms and Graves as defendants did not defeat United's right to arbitrate the dispute, despite the fact that Harms and Graves were not parties to the 1996 Services Agreement containing the arbitration clause. Accordingly, the trial court ordered that the remaining claims be arbitrated pursuant to the rules of the American Arbitration Association and stayed the proceedings pending the outcome of arbitration.

## ISSUES

1. Did the trial court err in dismissing CCP's causes of action for fraud, unconscionability, and a violation of public policy pursuant to Rule 12(b)(6)?
2. Did the trial court err in finding that the arbitration clause was applicable to individual defendants and in staying the remaining claims pending arbitration?

## 1. 12(b)(6) Motions

CCP contends the trial court erred in dismissing the causes of action for fraudulent inducement, unconscionability, and

---

**2.** The trial court also implicitly found that the FAA applied because the contract was one evidencing a transaction involving commerce pursuant to 9 U.S.C.A. § 2 (2000).

violation of public policy° pursuant to Rule 12(b)(6). We disagree.

The ruling on a Rule 12(b)(6), SCRCP, motion to dismiss must be based solely upon the allegations set forth in the complaint. *Baird v. Charleston County,* 333 S.C. 519, 527, 511 S.E.2d 69, 73 (1999); *Washington v. Lexington County Jail,* 337 S.C. 400, 405, 523 S.E.2d 204, 206 (Ct.App.1999). A 12(b)(6) motion should not be granted if the facts alleged and the inferences reasonably deducible therefrom would entitle the plaintiff to any relief on any theory of the case. *Gentry v. Yonce,* 337 S.C. 1, 5, 522 S.E.2d 137, 139 (1999). The question to be considered is whether, when viewed in the light most favorable to the plaintiff, the complaint states any valid claim for relief. Further, the complaint should not be dismissed merely because the court doubts the plaintiff will prevail. *Gentry, id.* at 5, 522 S.E.2d at 139.

## A. Fraud and Concealment

South Carolina law generally favors arbitration. *McMillan v. Gold Kist, Inc.,* 353 S.C. 353, 359, 577 S.E.2d 482, 485 (Ct.App.2003). In interpreting agreements within the scope of the FAA, "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration." *Stokes v. Metropolitan Life Ins. Co.,* 351 S.C. 606, 610, 571 S.E.2d 711, 714 (Ct.App.2002) (quoting *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University,* 489 U.S. 468, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989)). Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *Zabinski v. Bright Acres Associates,* 346 S.C. 580, 597, 553 S.E.2d 110, 118 (2001). Further, unless the Court can say with positive assurance that the arbitration clause is not susceptible to an interpretation that covers the dispute, arbitration should be ordered. *Id.* at 597, 553 S.E.2d at 118.

A written provision in any contract evidencing a transaction involving commerce to settle by arbitration shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract. 9 U.S.C.A. § 2 (2000). A party cannot avoid arbitration

through rescission of an entire contract when there is no independent challenge to the arbitration clause itself. There must be fraud in the inducement of the arbitration agreement to avoid arbitration of the contract. *South Carolina Pub. Serv. Auth. v. Great Western Coal (Kentucky), Inc.,* 312 S.C. 559, 562–63, 437 S.E.2d 22, 24 (1993) (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 87 S.Ct. 1801, 18 L.E.2d 1270 (1967)). "Fraud as a defense to an arbitration clause must be fraud *specifically as to the arbitration clause and not the contract generally.*" *South Carolina Pub. Serv. Auth., id.* at 563, 437 S.E.2d at 24 (emphasis added).

In the present case, CCP alleged that at the time it was considering and negotiating the 1996 Services Agreement with United, CCP relied on and utilized the employees and services of United to run virtually all of CCP's business. Further, CCP had no employees of its own, and used United employees to fill all of its officer positions.

CCP alleged that, during the 1996 negotiations, Bill Martin [3] was both its CEO and a paid employee of UHS. CCP alleged that as its CEO, Martin was responsible for negotiating and reviewing proposed contracts. CCP further alleged that Martin failed to object to the inclusion of the arbitration clause in the 1996 Services Agreement because Martin knew United had committed various torts and other wrongful acts against CCP and Martin knew that United planned to commit additional torts and wrongful acts against CCP in the future. Alternatively, CCP alleged that Martin knew United inserted the arbitration clause into the 1996 Services to limit CCP's ability to discover the extent of United's misconduct and to limit its ability to recover punitive or exemplary damages. CCP further alleged that Martin failed to disclose to CCP's board of directors why United wanted the arbitration clause included or to explain the impact of the provision, and that Martin told CCP's board that the 1996 Services Agreement was merely changing the method of payment between CCP and United.

---

3. Despite CCP's allegations of wrongdoing against Martin, he is not a named defendant.

The trial court found that the pleadings failed to state a claim that CCP was fraudulently induced into agreeing to the arbitration provision. The trial court found that any reliance on the alleged misconduct only went to the entire 1996 Services Agreement and not solely to the arbitration clause. Accordingly, the trial court ruled that, pursuant to *Prima Paint*, any claims regarding the making of the 1996 Service Agreement must be arbitrated.

CCP argues on appeal that the fraud alleged in the complaint is particular to the arbitration clause and does not go to the entire agreement. CCP essentially alleges that the contract was procured through fraud and that the arbitration clause was a vehicle used by United to further the fraud, to prevent its discovery, and to prevent recovery if the fraud was discovered. CCP also argues that, had Martin performed his duties as CEO and informed CCP that United was committing torts, breaches of the 1984 contract, and various other malfeasances against CCP, CCP would never have agreed to a clause mandating arbitration and limiting punitive damages. However, CCP claims that because United controlled so much of its business and possessed so many of its records and files, CCP was held captive by United and would have been forced to sign the 1996 Services Agreement regardless of whether Martin informed CCP of United's misconduct and its intent to commit future misconduct.[4] Therefore, CCP contends in its brief that, had it known United was acting improperly, CCP would have still signed the 1996 Services Agreement, but would not have agreed to the arbitration clause within the contract.[5]

---

4. It is unclear from the record why CCP allowed itself to become so entangled with United. However, it appears that at some point after it signed the 1996 Services Agreement, CCP decided to become more independent of United and discovered the alleged fraud.

5. CCP supports its argument with the affidavit of Dr. Rice Holcombe, who became Chairman of the Board of Directors in 1996. Dr. Holcombe claims that, had he been informed of the prior misconduct by United or its intent to commit future misconduct, he would not have agreed to the inclusion of the arbitration clause in its current form, or would have insisted the arbitration clause be removed altogether. Ordinarily, if, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the trial court, the motion shall be treated as one for summary judgment and disposed of as provided in

We hold that CCP made no allegation of fraud specifically as to the arbitration clause, but only challenged the contract generally in its assertion that United committed fraud as to the contract. CCP has not alleged that United lied or committed fraud to induce CCP to enter into the arbitration clause or that United lied or misrepresented the effect of the arbitration agreement, its validity, CCP's ability to recover punitive damages, or CCP's ability to demand a jury trial. Therefore, the issue of whether the entire contract was fraudulently induced is the proper question here; meaning the matter must be decided in arbitration. *South Carolina Pub. Serv. Auth., id.* at 563, 437 S.E.2d at 24.

The dissent argues that CCP's allegation that the arbitration provision was inserted to limit CCP's ability to discover the extent of the misconduct and to limit punitive damages is sufficient under notice pleading rules to survive a 12(b)(6) motion. However, the dissent ignores the rationale behind *Prima Paint* and the strong presumption favoring arbitration of disputes. Further, in very similar cases, other courts have held an allegation that an arbitration clause was used to further a scheme to defraud is not sufficient to allege fraud as to the arbitration clause specifically. *Garten v. Kurth*, 265 F.3d 136, 143–44 (2nd Cir.2001) (citing *Campaniello Imports, Ltd., v. Saporiti Italia, S.p.A.*, 117 F.3d 655 (2nd Cir.1997)) (where there is merely a link between the arbitration clause and general fraud alleged by the plaintiff, and nothing deficient in an arbitration clause itself, a plaintiff may not establish a connection between the alleged fraud and the arbitration clause merely by adding the allegation that the arbitration clause was a part of the overall scheme to defraud); *Phillips v. Home Equity Services, Inc.*, 179 F.Supp.2d 840, 845

---

Rule 56, SCRCP. Rule 12(c), SCRCP; *Berry v. McLeod*, 328 S.C. 435, 492 S.E.2d 794 (Ct.App.1997) (holding that where the trial court dismisses a cause of action based upon matters outside the pleadings, a 12(b)(6) motion is converted into Rule 56 motion for summary judgment). However, while United claims in its brief that Dr. Holcombe's affidavit cannot be considered because the affidavit relates to factual issues that are inappropriate to take into consideration at the 12(b)(6) stage, neither party argues that the motion should have been converted into a motion for summary judgment. Further, CCP states in its reply brief that the affidavit is not needed to decide the issue because the second amended complaint is sufficient standing alone. Accordingly, we have not considered the affidavit in our decision.

(N.D.Ill.2001) (where there was no evidence that the defendants misrepresented the purpose or the operation of the arbitration clause, there was no evidence to conclude that the parties never agreed to arbitrate their dispute); *Hayes Children Leasing Co. v. NCR Corp.*, 37 Cal.App.4th 775, 43 Cal.Rptr.2d 650 (Cal.App. 1 Dist.1995) (holding that it is not enough to allege that the arbitration clause was inserted to further a fraudulent scheme; the question in all cases simply is whether the agreement to arbitrate itself was induced by some fraud).

We can find no allegation in the complaint that the arbitration clause itself was induced by fraud. CCP has simply alleged that United was engaged in fraudulent conduct throughout negotiations, and that the arbitration clause was inserted in a scheme to further that fraud. To follow the dissent's rationale would violate the holding in *Prima Paint*[6] and undermine the policy favoring arbitration.

### B. Unconscionability and Public Policy

 CCP argues that it adequately pled the arbitration provision was unconscionable and in violation of public policy. We disagree.

Unconscionability has been recognized as the absence of meaningful choice on the part of one party due to one-sided contract provisions, together with terms that are so oppressive that no reasonable person would make them and no fair and honest person would accept them. *Fanning v. Fritz's Pontiac–Cadillac–Buick, Inc.*, 322 S.C. 399, 403, 472 S.E.2d 242, 245 (1996).

The trial court ruled that CCP's allegations of unconscionability and violation of public policy as to the arbitration clause

---

6. A minority of courts have rejected *Prima Paint* on state law grounds. *Shaffer v. Jeffery*, 915 P.2d 910 (allegations of fraud in the inducement of a contract or agreement generally, apart from the clause to arbitrate, must be resolved by the court prior to either compelling arbitration or dismissing the case); *Blaine v. John Coleman Hayes & Associates, Inc.*, 818 S.W.2d 33 (1991) (adopting the minority viewpoint that if there are allegations the contract in general was procured by fraud, that a court, not an arbitrator should make that determination). However, this Court adopted the *Prima Paint* rule in *South Carolina Pub. Serv. Auth.* Further, as noted above, the parties have not challenged the judge's implicit ruling that the transaction involves interstate commerce.

were based on the same claims the trial court rejected; that had CCP known of the alleged misconduct by United and Martin, it would have still entered into the 1996 Services Agreement but would not have agreed to the arbitration clause. Therefore, the trial court dismissed both causes of action for failure to state a claim pursuant to Rule 12(b)(6).

CCP argues it sufficiently pled the arbitration clause was unconscionable because Martin, in his capacity as CEO, breached his fiduciary duties by acting in the best interests of United. Again, CCP argues that Martin should have informed CCP about the arbitration clause and the rights being forsaken by CCP. CCP further contends the arbitration clause was one-sided in favor of United because it prevents discovery[7] and prohibits an award of punitive damages.

We hold that CCP has failed to allege any facts that would show the clause was unconscionable. Both parties were sophisticated entities and, as United points out in its brief, CCP was apparently represented by independent counsel. While CCP alleged it lacked a meaningful choice as to the entire contract, CCP has simply failed to allege that it lacked a meaningful choice as to the arbitration clause specifically. Therefore, we agree with the trial court's ruling that any misconduct by Martin affected whether the entire agreement was unconscionable, not simply the arbitration clause.

As to the substantive claim involving the public policy issue, CCP alleged that because the clause sought to limit CCP's rights and remedies, the clause was unenforceable as a matter of law. In its complaint, CCP also alleged that its rights and remedies under the SCUTPA were limited by the clause. This Court has not addressed whether it violates South Carolina public policy for parties to voluntarily forgo punitive damages in an arbitration agreement.

■■■ The general rule is that courts will not enforce a contract which is violative of public policy, statutory law, or provisions of the Constitution. *Beach Co. v. Twillman, Ltd.,*

---

7. We note that the arbitration clause does not expressly prevent discovery, and the American Arbitration Association rules provide that arbitrators have broad authority to order and control discovery, including depositions.

351 S.C. 56, 64, 566 S.E.2d 863, 866–67 (Ct.App.2002). As noted in 83 A.L.R.3d 1037, 1039 (1978):

> courts in some cases have held that an arbitrator has the power, at least in certain circumstances, to award punitive damages. Thus, the court in one case has held that arbitrators possess the power, apparently without limitation in a labor law context, to award punitive damages. In other cases, however, the courts have taken the position that arbitrators have the power to award punitive damages only when they are given such power by express language in the contract authorizing arbitration or in the submission papers.

A number of courts in other jurisdictions have held that an arbitration agreement limiting or excluding punitive damages is enforceable. *Martin v. SCI Mgt. L.P.*, 296 F.Supp.2d 462 (S.D.N.Y.2003) (parties to an arbitration agreement may expressly preclude an arbitrator from awarding punitive damages); *Investment Partners, L.P. v. Glamour Shots Licensing, Inc.*, 298 F.3d 314 (C.A.5 2002) (holding provisions in arbitration agreements that prohibit punitive damages are generally enforceable); *7–Eleven, Inc. v. Dar*, 325 Ill.App.3d 399, 258 Ill.Dec. 826, 757 N.E.2d 515 (2001) (holding arbitrators may award punitive damages only where the parties have expressly agreed to the arbitrator's authority to award punitive damages).

Other courts have held that an arbitration agreement excluding punitive damages violates public policy. *Ex parte Thicklin*, 824 So.2d 723 (Ala.2002) (holding that it violates Alabama public policy for a party to contract away its liability for punitive damages, regardless of whether the provision was intended to operate in an arbitral or a judicial forum); *State ex rel. Dunlap v. Berger*, 211 W.Va. 549, 567 S.E.2d 265 (2002) (holding prohibitions on punitive damages and class action relief that would be the result of the application of a purchase and finance agreement are clearly unconscionable).

CCP cites *In re Managed Care Litig.*, 132 F.Supp.2d 989 (S.D.Fla.2000), in support of its public policy argument. In that case, the U.S. District Court for the Southern District of Florida ruled that a similar clause [8] excluding punitive or

---

**8.** The case involved several similar arbitration clauses that excluded punitive damages. UHG was one of the defendants.

exemplary damages was unenforceable as a matter of public policy as it related to the plaintiff's RICO [9] claims. However, the United States Supreme Court overturned that decision in *PacifiCare Health Systems, Inc. v. Book*, 538 U.S. 401, 123 S.Ct. 1531, 155 L.Ed.2d 578 (2003). The Supreme Court held that the issue of whether statutory treble damages under the RICO statute were barred was not yet ripe because there was some question as to whether treble damages were punitive or compensatory, and it was unclear how an arbitrator would rule on the issue. *PacifiCare*, 538 U.S. at 406–07, 123 S.Ct. at 1535–36.

▮▮▮ Based on *PacifiCare*, it is clear an arbitrator may or may not choose to award treble damages in accordance with the SCUTPA, depending upon whether an arbitrator finds the SCUTPA was violated and whether the arbitrator finds that statutory treble damages are punitive or compensatory damages. Accordingly, we hold that the question of whether the clause preventing punitive damages violates public policy as to the SCUTPA is not yet ripe because an arbitrator has not ruled on the issue.

However, CCP is also seeking punitive damages in several common law causes of action. We hold that this issue is also not ripe for two reasons. First, it is unclear whether CCP will prevail on the merits in arbitration. Second, it is unclear whether an arbitrator would find that punitive damages are warranted. Accordingly, we hold that any challenge that the clause violates public policy is premature. *See Hawkins v. Aid Assn. for Lutherans*, 338 F.3d 801 (7th Cir.2003) (holding that complaints about the unavailability of punitive damages must first be presented to the arbitrator).

Additionally, we note that our holding in no way limits CCP's ability to pursue its claims of fraud in the inducement of the arbitration clause, unconscionability, and public policy violations in arbitration. *See Larry's United Super, Inc. v. Werries*, 253 F.3d 1083, 1086–87 (8th Cir.2001) (holding that whether federal public policy prohibits an individual from waiving certain statutory remedies is an issue that may be raised when challenging an arbitrator's award).

---

9. Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C.A. §§ 1961 *et seq.*

### 2. Non–Signatory Defendants; Stay of Proceedings

■ CCP also contends that, even assuming the arbitration clause is enforceable, the claims against Harms and Graves fall outside of its scope and must be litigated. CCP also contends the trial court erred in staying the proceedings. We disagree, and hold that the trial court's order is not immediately appealable.

This Court has held that the FAA does not preempt South Carolina state law in regard to procedural rules on the appealability of arbitration orders. *Toler's Cove Homeowners Assn., Inc. v. Trident Const. Co., Inc.*, 355 S.C. 605, 611, 586 S.E.2d 581, 584–85 (2003) (holding there is no federal policy favoring arbitration under a certain set of procedural rules and the federal policy is simply to ensure the enforceability of private agreements to arbitrate; therefore, South Carolina law is not invalidating the arbitration agreement or undermining the goals and policies of the FAA). Pursuant to S.C.Code Ann. § 15–48–200(a) (2003), an appeal may be taken from:

(1) An order denying an application to compel arbitration made under § 15–48–20;

(2) An order granting an application to stay arbitration made under § 15–48–20(b);

(3) An order confirming or denying confirmation of an award;

(4) An order modifying or correcting an award;

(5) An order vacating an award without directing a rehearing; or

(6) A judgment or decree entered pursuant to the provisions of this chapter.

Section 15–48–200 does not expressly permit an appeal from an order granting an application to compel arbitration or from an order to stay claims pending arbitration. Therefore, the order compelling arbitration of the claims against Harms and Graves and staying the remaining claims is not immediately appealable.

## CONCLUSION

We affirm the trial court's dismissal of CCP's fraud, public policy, and unconscionability claims pursuant to Rule 12(b)(6).

Any claims related to the making of the contract or the arbitration clause may be pursued in arbitration. We also hold the trial court's order compelling arbitration of the claims against the non-signatories and staying the proceedings is not immediately appealable.

**AFFIRMED.**

MOORE and PLEICONES, JJ., concur.

Acting Justice ROGER M. YOUNG dissenting in a separate opinion in which TOAL, C.J., concurs.

Acting Justice YOUNG.

I concur in Part 1. B. and Part 2 of the majority's opinion. I respectfully dissent from Part 1. A., in which the majority holds that the Appellant's complaint does not specifically allege fraud in the inducement of the making of the arbitration clause contained in the contract. The majority finds the complaint alleges fraud in the inducement of only the contract. I disagree. I read the Second Amended Complaint as pleading a cause of action that sufficiently alleges fraud in the inducement of the arbitration clause to comply with precedents of this Court and Rule 12(b)(6), SCRCP. Therefore, I would reverse the trial court's grant of the Respondents' Rule 12(b)(6) motion to dismiss and remand to the trial court for further proceedings on that cause of action.

As the majority notes, in *S.C. Pub. Serv. Auth. v. Great W. Coal (Ky), Inc.,* 312 S.C. 559, 563, 437 S.E.2d 22, 24 (1993), this Court adopted the *Prima Paint* rule, which holds that to avoid arbitration through the rescission of the entire contract, a party must allege fraudulent inducement in the making of the arbitration clause specifically. A party may not avoid arbitration by alleging fraudulent inducement in the making of the contract generally. I find the Appellant has met this burden.

The Appellant's 21st cause of action in the Second Amended Complaint alleges that the United Respondents [10] inserted the arbitration clause into the contract to limit Appellant's ability

---

10. United HealthCare Services, Inc., United Healthcare Group, Incorporated, and United Healthcare Insurance Co.

to discover the extent of the United Respondents' misconduct and to limit Appellant's right to recover punitive damages. Specifically, the amended complaint alleges that Bill Martin, an employee of the United Respondents and, allegedly, an agent of Appellant, knew the true reason the United Respondents wanted the arbitration clause inserted, knew of the Appellant's Board of Directors reliance on him to advise the Board concerning contractual matters, and failed to disclose to the Board why the United Respondents wanted the arbitration clause inserted or of its impact. The complaint alleges that Martin informed the Appellant's Board that the contract merely changed the method of payment between the parties and that the United Respondents required Martin and other United employees to provide Appellant with false information regarding their true intentions concerning the fulfillment of contract obligations. This cause of action further alleges the United Respondents planned to commit additional torts, breaches of contract and fiduciary duties, as well as other unspecified wrongs. The complaint specifically alleges the United Respondents had the arbitration clause inserted in an effort to prevent the Appellant from discovering these past and future planned wrongdoings, as well as to limit the Appellant's right to recover punitive damages for this misconduct. Finally, the cause of action alleges the United Respondents required their employees to hide both the reason for the insertion of the arbitration clause and the impact of the clause.

At no point does the Second Amended Complaint allege the Respondents fraudulently induced Appellant into entering the contract generally. This cause of action appears to be carefully drafted and is very specific in its averment of facts that allege the arbitration clause was fraudulently inserted in an attempt by the United Respondents to limit the Appellant's ability to discover other wrongful acts committed by the United Respondents as well as to limit the Appellant's right to recover punitive damages for those wrongful acts.

The Appellant's original complaint and its first amendment would not have survived a *S.C. Pub. Serv. Auth. v. Great W. Coal (Ky), Inc.* challenge. However, the trial court allowed the Appellant to amend the complaint a second time, and in my opinion this last amendment corrected the earlier defects. The Appellant should not be penalized for these earlier short-

comings when analyzing the Second Amended Complaint. When viewed in a light most favorable to the Appellant as required in a Rule 12(b)(6) motion, the Second Amended Complaint sets forth facts that specifically allege the arbitration clause itself was the subject of the fraudulent inducement, and not the contract generally. Therefore, I would remand the case to the trial court with instructions to proceed on the fraudulent inducement cause of action while staying the remainder of the case until such time as that issue has been resolved.

TOAL, C.J., concurs.