14-4323
*Holick v. Cellular Sales of New York, LLC*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term, 2014

(Argued: June 4, 2015     Decided: September 22, 2015)

Docket No. 14-4323

JAN P. HOLICK, JR., STEVEN MOFFITT, JUSTIN MOFFITT, GURWINDER
SINGH, JASON MACK, TIMOTHY M. PRATT, and WILLIAM BURRELL, on
behalf of themselves and all others similarly situated,

*Plaintiffs-Appellees*,

-v.-

CELLULAR SALES OF NEW YORK, LLC, CELLULAR SALES OF KNOXVILLE,
INC.,

*Defendants-Appellants*.[1]

Before: WESLEY, HALL, and CARNEY, *Circuit Judges*.

---

[1] The Clerk of the Court is respectfully directed to amend the caption to conform to the above.

Plaintiffs-Appellees Timothy Pratt and William Burrell are two of the named plaintiffs in this putative class action lawsuit against Defendants-Appellants Cellular Sales of New York, LLC and its parent company Cellular Sales of Knoxville, Inc. In their suit brought under state and federal labor laws, Plaintiffs allege that, during 2010 and 2011, they were unlawfully denied various forms of compensation and benefits because Defendants improperly classified them as independent contractors rather than employees. Defendants moved to compel arbitration based on an arbitration clause contained in Plaintiffs' subsequent employment agreements. The district court denied the motion to compel arbitration, finding that another contract that was in effect during the time when Plaintiffs' claims arose supported a finding of non-arbitrability. Defendants now pursue this interlocutory appeal. We AFFIRM.

C. LARRY CARBO, III, Chamberlain, Hrdlicka, White, Williams & Aughtry, Houston, TX (Julie R. Offerman, Chamberlain, Hrdlicka, White, Williams & Aughtry, Houston, TX; Joseph M. Dougherty, Hinman Straub, P.C., Albany, NY, *on the brief*), *for Defendants-Appellants*.

RONALD G. DUNN (Daniel A. Jacobs, *on the brief*), Gleason, Dunn, Walsh & O'Shea, Albany, NY, *for Plaintiffs-Appellees*.

WESLEY, *Circuit Judge*:

Plaintiffs-Appellees Timothy Pratt and William Burrell are two of the

named plaintiffs in this putative class action lawsuit against Defendants-

Appellants Cellular Sales of New York, LLC ("Cellular Sales") and its parent

company Cellular Sales of Knoxville, Inc. ("Cellular Sales of Knoxville"). In their

suit brought under state and federal labor laws, Plaintiffs allege that, during 2010

and 2011, they were unlawfully denied various forms of compensation and

benefits because Defendants improperly classified them as independent contractors rather than employees.  Defendants moved to compel arbitration based on an arbitration clause contained in Plaintiffs' subsequent employment agreements.  The United States District Court for the Northern District of New York (Mordue, *J.*) denied the motion to compel arbitration, finding that another contract that was in effect during the time when Plaintiffs' claims arose supported a finding of non-arbitrability.  Defendants now pursue this interlocutory appeal.

For the reasons stated below, the judgment of the district court is AFFIRMED.

## BACKGROUND[2]

Cellular Sales is in the business of selling Verizon Wireless cellular service plans and merchandise.  Plaintiffs-Appellees Timothy Pratt and William Burrell both began their relationship with Cellular Sales in 2010.  At that time, Cellular Sales required Plaintiffs to form a corporate entity (such as a limited liability company) and sign a "Non-Exclusive Independent Sales Agreement" ("Sales

---

[2] The facts are drawn from the district court's memorandum, supplemented as necessary by the record.  The facts provided relate only to Pratt and Burrell because Defendants Cellular Sales and its parent company have appealed the district court's denial of the motion to compel arbitration only as to those Plaintiffs.

3

Agreement") in order to be sales representatives. Joint App. 231, 241.[3] Each

Plaintiff signed a Sales Agreement as the representative of his respective

company; the Sales Agreements established a formal relationship between

Cellular Sales and Plaintiffs' companies. Relevant for this appeal, each Sales

Agreement stated that the respective Plaintiff's company was an "independent

contractor" of Cellular Sales. Joint App. 233. In turn, each Plaintiff was an

employee of his own company (referred to as a "Sales Company"): "*Each person*

*who is engaged by the Sales Company to render services* with respect to those

activities for which Sales Company receives Sales Commissions *shall be an*

*employee of the Sales Company and not of* [*Cellular Sales*]." *Id.* (emphases added).

The Sales Agreements went on to state that Cellular Sales would not

withhold taxes on the commissions Plaintiffs earned and that Plaintiffs were not

entitled to "any compensation, benefits, vacation or vacation pay, sick leave,

participation in a retirement program, health insurance, disability insurance,

unemployment benefits or other benefits from [Cellular Sales]." Joint App. 234.

Each Sales Agreement included a dispute resolution mechanism that required

the parties to submit "a dispute aris[ing] under th[e] Agreement . . . to

_____

[3] For convenience, we cite to the contracts Burrell signed. The contracts Pratt signed contain contractual provisions that are identical to the provisions cited in this opinion. *See* Joint App. 225–28 (Sales Agreement); Joint App. 211–17 (Compensation Agreement).

4

mediation." Joint App. 235. Should mediation fail to resolve the dispute, the parties retained "the right to pursue any appropriate legal actions against the other Party in a court of competent jurisdiction." Joint App. 235–36.

In 2011, Cellular Sales offered Plaintiffs-Appellees full-time employment. On or about January 1, 2012, both Pratt and Burrell signed Compensation Agreements with Cellular Sales that, in contrast with the prior Sales Agreements, contained an arbitration clause. This provision states, in relevant part: "All claims, disputes, or controversies arising out of, or in relation to this document or Employee's employment with [Cellular Sales] shall be decided by arbitration . . . ." Joint App. 219. The first paragraph of the Compensation Agreement provides for an at-will employment relationship, stating that "[Cellular Sales] has employed you ('Employee') to sell [Verizon Wireless services and related equipment]." Joint App. 218. Plaintiffs-Appellees allege that, after the Compensation Agreements were signed, Cellular Sales began to treat them differently by, *inter alia*, directly paying commissions to Plaintiffs-Appellees and withholding federal taxes from those commissions.

Plaintiffs-Appellees have temporally confined their claims to events that transpired prior to January 1, 2012. They allege that before the execution of the

5

Compensation Agreements, Cellular Sales misclassified them as independent

contractors when they were actually employees (within the meaning of various

labor laws) because Cellular Sales controlled their work performance.  As a

result, Plaintiffs-Appellees were allegedly deprived of, among other things,

overtime compensation and minimum wage.  Plaintiffs-Appellees seek

compensation owed under the Fair Labor Standards Act of 1938 ("FLSA"), 29

U.S.C. § 201 *et seq.*, New York common law, and various provisions of New

York's Labor Law, N.Y. Lab. Law §§ 190 *et seq.*, 650 *et seq.* (McKinney).

## DISCUSSION[4]

Defendants-Appellants Cellular Sales and Cellular Sales of Knoxville, Inc.

argue that the denial of their motion to compel arbitration "conflicts with long-

standing federal precedent under which all doubts as to the intent of the parties

and the scope of an arbitration clause must be resolved generously in favor of

arbitration."[5]  Appellants' Br. 10.  Plaintiffs-Appellees Pratt and Burrell respond

that this Court need not reach Defendants-Appellants' argument because the

Compensation Agreement is unambiguous.  Under Plaintiffs-Appellees' view,

---

[4] This Court reviews *de novo* the district court's decision to deny a motion to compel arbitration.  *Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 49 (2d Cir. 2004).

[5] We have jurisdiction over this interlocutory appeal pursuant to 9 U.S.C. § 16(a)(1)(C).

6

the plain language of the contract reveals that the parties did not intend the arbitration clause to have a retroactive scope because Plaintiffs-Appellees' employment started the day the Compensation Agreements were signed.

"In deciding whether a dispute is arbitrable, we must answer two questions: (1) whether the parties agreed to arbitrate, and, if so, (2) whether the scope of that agreement encompasses the claims at issue." *Bank Julius Baer & Co. v. Waxfield Ltd.*, 424 F.3d 278, 281 (2d Cir. 2005) (alteration and internal quotation marks omitted), *abrogated on other grounds by Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287 (2010). In this case, the parties agreed in the Compensation Agreement to arbitrate. Thus, our discussion focuses on the scope of that agreement. The district court correctly determined that the arbitration clause at issue here is broad because it applies to "[a]ll claims, disputes, or controversies arising out of, or in relation to this document or Employee's employment with [Cellular Sales]," Joint App. 219. *See JLM Indus. v. Stolt-Nielsen SA*, 387 F.3d 163, 172 (2d Cir. 2004). Further, since the arbitration clause has no explicit temporal limitation, our task is to analyze whether the claims "aris[e] out of, or [relate] to . . . Employee's employment with [Cellular Sales]," Joint App.

7

219.[6] *See Smith/Enron Cogeneration Ltd. P'ship v. Smith Cogeneration Int'l*, 198 F.3d 88, 99 (2d Cir. 1999).

"[I]n light of the strong federal policy in favor of arbitration, the existence of a broad agreement to arbitrate creates a presumption of arbitrability which is only overcome if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage."[7] *Id.* (internal quotation marks omitted). However, the Federal Arbitration Act's[8] liberal policy in favor of

---

[6] We do not analyze the portion of the arbitration agreement that references "disputes . . . arising out of, or in relation to this document," Joint App. 219, because Defendants-Appellants have not argued that Plaintiffs-Appellees' claims arose out of the Compensation Agreements.

[7] Plaintiffs-Appellees contend that a recent Second Circuit decision, *Lloyd v. J.P. Morgan Chase & Co.*, 791 F.3d 265, 269–70 (2d Cir. 2015), undermines prior cases in which this Court has required positive assurance to rebut the presumption of arbitrability. The *Lloyd* Court labeled the presumption of arbitrability "soft," and, in Plaintiffs-Appellees' view, discarded the requirement for positive assurance to rebut the presumption of arbitrability. *Id.* at 270. We find Plaintiffs-Appellees' argument unpersuasive for two reasons. First, since "one panel of this Court [typically] cannot overrule a prior decision of another panel," *Gelman v. Ashcroft*, 372 F.3d 495, 499 (2d Cir. 2004) (internal quotation marks omitted), we are bound by this Circuit's cases that require positive assurance to rebut the presumption of arbitrability. Second, the analysis in *Lloyd* did not turn on the presumption of arbitrability, *see* 791 F.3d at 270–71, making its characterization of the presumption dicta.

[8] The Federal Arbitration Act provides: "A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid,

arbitration is limited by the principle that "arbitration is a matter of consent, not coercion. Specifically, arbitration is a matter of contract, and therefore a party cannot be required to submit to arbitration any dispute which [it] has not agreed so to submit." *JLM Indus.*, 387 F.3d at 171 (alteration in original) (citations and internal quotation marks omitted). It is axiomatic that "[w]hether enforcing an agreement to arbitrate or construing an arbitration clause, courts and arbitrators must give effect to the contractual rights and expectations of the parties. In this endeavor, as with any other contract, the parties' intentions control." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010) (citations and internal quotation marks omitted).

When considering whether claims fall within the scope of an arbitration clause, therefore, we analyze the factual allegations made in the plaintiff's complaint. *Smith/Enron*, 198 F.3d at 99. "If the allegations underlying the claims touch matters covered by the parties' . . . agreements, then those claims must be arbitrated, whatever the legal labels attached to them." *Id.* (internal quotation marks omitted).[9]

---

irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

[9] "When deciding whether the parties agreed to arbitrate a certain matter . . . , courts generally . . . apply ordinary state-law principles that govern the formation of

9

To support their argument that the Compensation Agreement's arbitration clause applies only prospectively, Pratt and Burrell rely heavily on an unpublished opinion in which the Fourth Circuit interpreted an arbitration agreement in a context quite similar to this case. *See Newbanks v. Cellular Sales of Knoxville, Inc.*, 548 F. App'x 851(4th Cir. 2013). As newly hired employees of the defendants (one of which was Cellular Sales of Knoxville, Inc.), the *Newbanks* plaintiffs signed compensation agreements that contained an arbitration clause. *Id.* at 852. As in this case, the plaintiffs had previously been employees of their own sales companies, which, in turn, were independent contractors for the defendants pursuant to a sales agreement between the sales companies and the defendants. *Id.* at 852, 855. Also similar to our case, the execution of the new compensation agreements was the first time the plaintiffs had bound themselves individually in a contract with the defendants. *Id.*

---

contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). We interpret a contract "to give full meaning and effect to all of its provisions." *LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195, 206 (2d Cir. 2005) (internal quotation marks omitted). On appeal, both parties cite to New York law, and neither party has argued that the law of any other state applies to this dispute. In New York, a contract's clauses "should be read together contextually in order to give them meaning." *Diamond Castle Partners IV PRC, L.P. v. IAC/InterActiveCorp*, 82 A.D.3d 421, 422 (N.Y. App. Div. 2011) (internal quotation marks omitted). "It is a fundamental principle of contract interpretation that, in the absence of ambiguity, the intent of the parties must be determined from their final writing and no parol evidence or extrinsic evidence is admissible." *Int'l Klafter Co. v. Cont'l Cas. Co.*, 869 F.2d 96, 100 (2d Cir. 1989).

Based on the contract's plain language, the *Newbanks* court determined that "th[e] arbitration requirement only applies to causes of action accruing from the execution of the [c]ompensation [a]greements and onward." *Id.* at 855. The Fourth Circuit grounded its analysis in the compensation agreements' first paragraph, which "informed the signer that he or she had become an at-will employee of Cellular Sales." *Id.* The court went on to support its conclusion by noting that the plaintiffs had limited their claims to the time period prior to when they signed the compensation agreements and that, during that period, the plaintiffs "did not have any formal or contractual relationship with Cellular Sales at all." *Id.* Although acknowledging that the compensation agreements did not reference the prior sales agreement, the court nevertheless deemed the sales agreement the "only relevant document" that existed during the time period to which the plaintiffs had confined their claims. *Id.*

Unlike the Fourth Circuit, we are not persuaded that this case begins and ends with the plain language of the Compensation Agreements. The first paragraph of the Compensation Agreement states in full:

> Cellular Sales ("Company") is in the business of retail sales of Verizon Wireless services and related equipment and accessories ("Products"). Company has employed you ("Employee") to sell the Products. Employee's employment with Company is, and shall

11

> remain at all times, "at-will," and Company may terminate Employee's employment at any time for any reason or for no reason, and Employee may terminate employment at any time for any reason or for no reason.

Joint App. 218 (emphases omitted). Neither this paragraph nor any other provision of the contract states that the employer-employee relationship commenced with the execution of the Compensation Agreement or otherwise uses language stating that the employment relationship replaced a prior contractual arrangement. The use of the phrase "has employed you" does not indicate specifically when the employment relationship commenced. Although contractual language referring to the payment of commissions "beginning on the third month after commencement of employment" and an example concerning January sales commissions might suggest an understanding that the contractual employment relationship began in January 2012, Joint App. 219, they are not determinative of the start date for Plaintiffs-Appellees' employment. Instead, it is only through parol evidence that we know that the employer-employee relationship commenced when Pratt and Burrell signed the Compensation Agreements. Solely reading within the four corners of the contract, we cannot discern whether the parties intended for the arbitration agreement's scope to cover the current dispute. Since the plain language of the Compensation

12

Agreement is ambiguous, we turn to whether parol evidence sheds light on the parties' intent.

Defendants-Appellants contend that the arbitration clause here is susceptible of an interpretation that covers the dispute at issue here because Pratt and Burrell allege that they were Cellular Sales employees prior to signing the Compensation Agreements.[10]  In response, Plaintiffs-Appellees contend that the prior Sales Agreements and the conduct of the parties reveals positive assurance that the parties did not intend for the arbitration agreement to apply to claims that arose during the time period when Defendants-Appellants affirmatively labeled Plaintiffs-Appellees as non-employees.[11]

---

[10] Defendants-Appellants also submit that Pratt and Burrell have not proffered forceful evidence that supports a finding of non-arbitrability.  Their argument is rooted in a line of Supreme Court cases that relate to arbitration clauses in collective bargaining agreements.  *See United Steel Workers Local 4-5025 v. E.I. DuPont de Nemours & Co.*, 565 F.3d 99, 101–02 (2d Cir. 2009) (per curiam); *see, e.g., AT&T Techs. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986).  As the Supreme Court has noted, "arbitrators are in a better position than courts to interpret the terms of a [collective bargaining agreement]." *Wright v. Universal Mar. Serv. Corp.*, 525 U.S. 70, 78 (1998) (emphasis omitted).  Although this Court has also required forceful evidence to rebut the presumption of arbitrability in the context of international arbitration agreements, we reasoned that such an approach was correct because "[t]he policy in favor of arbitration is even stronger in the context of international business transactions" than the typical case. *David L. Threlkeld & Co. v. Metallgesellschaft, Ltd.*, 923 F.2d 245, 248 (2d Cir. 1991).  Defendants-Appellants have not persuaded us that the forceful evidence requirement should be extended to the contract presently before us.
[11] In the alternative, Plaintiffs-Appellees submit that we can affirm based on the alleged unconscionability of certain aspects of the arbitration agreement.  Our resolution of the

13

Defendants-Appellants are correct that this Court has held that broad arbitration provisions that contain no express temporal limitation can apply to claims that arose prior to the execution of the arbitration agreement. For example, in *Coenen v. R.W. Pressprich & Co.*, 453 F.2d 1209 (2d Cir. 1972), the plaintiff had signed an arbitration agreement as part of his application for membership in the New York Stock Exchange ("NYSE"); it provided that the parties agreed to arbitrate "[a]ny controversy between . . . members . . . ." *Id.* at 1211–12 (alteration in original). The plaintiff subsequently brought claims against another NYSE member named Pressprich. *See id.* The plaintiff argued that he should not be required to arbitrate because the claim predated the arbitration agreement; this Court disagreed. *See id.* We reasoned that, even though the claim predated the arbitration agreement, the plaintiff had signed it "with full knowledge that he had a claim against Pressprich and that Pressprich was a Stock Exchange member." *Id.* at 1212.[12] Unfortunately for the Defendants-

arbitrability issue in Plaintiffs-Appellees' favor makes it unnecessary for us to evaluate the merits of their unconscionability arguments in the first instance.

[12] Defendants-Appellants also cite *Arrigo v. Blue Fish Commodities*, 408 F. App'x 480 (2d Cir. 2011) (summary order), a case in which we stated that an arbitration clause that applied to "all federal and state statutory claims" covered employment-based claims that predated the arbitration clause. *Id.* at 481 (internal quotation marks omitted). However, in that case, the plaintiff signed a "comprehensive employment agreement" containing an arbitration clause "three months into his employment." *Id.* We conclude

Appellants, though, *Coenen* and cases like it are simply not on point. We are not persuaded by Defendants-Appellants' argument that we must interpret the arbitration agreement here to have an expansive temporal scope simply because this Court has done so in other cases. Instead, the correct approach is to assess whether the parties intended for the arbitration clause to cover the present dispute.

Based on the parties' conduct prior to executing the Compensation Agreements, the presumption of arbitrability is overcome because we find positive assurance that the arbitration clause's scope—at least insofar as it concerns the promise to arbitrate matters arising out of, or in relation to Employee's employment—is temporally limited. We reach this conclusion, in large part, based on the fact that when the Compensation Agreements were signed, the parties' contractual positions changed in a way that impacted arbitrability. In the Sales Agreements, Defendants-Appellants agreed with the Sales Companies that Pratt and Burrell were not employees of Cellular Sales. However, about a year and a half later, Defendants-Appellants agreed to employ

that *Arrigo* is distinguishable because there was no allegation in that case, as there is here, that the parties' contractual relationship changed in a way that implicated the arbitration clause at the time the contract containing the arbitration agreement was executed.

15

Pratt and Burrell.[13]  This evolving business relationship is directly relevant to whether the parties intended to have an employment relationship prior to executing the Compensation Agreement.  It would be inconsistent with the parties' conduct to construe the Compensation Agreement, which referenced "employment," to apply to a period when the parties themselves did not contemplate such a relationship.  *See Mehler v. Terminix Int'l Co.*, 205 F.3d 44, 49–50 (2d Cir. 2000) (determining scope of arbitration agreement by the contract's "language, the timing of its execution, and the conduct of the parties").  Defendants-Appellants' change in course is just the type of positive assurance required to show that the parties did not intend for the arbitration clause to cover the current dispute.

Our conclusion is confirmed by our examination of the allegations in the complaint.  To assess whether these allegations touch matters covered by the arbitration agreement, Defendants-Appellants would have us look at the complaint's allegation that Pratt and Burrell were in fact Defendants-Appellants'

---

[13] As late as December 28, 2011, an office manager at Cellular Sales explained how to fill out the employment application correctly, clarifying that recipients of her e-mail were not employees: "Everyone please make sure you answer the Y/N questions correctly on the Employment Application.  *You are not currently an employee of Cellular Sales--you are CONTRACTED with Cellular Sales; you are an employee of your own company (LLC or Corp)*."  Joint App. 257 (emphasis added).

statutory employees prior to executing the Compensation Agreements. That argument, although superficially appealing, is wrong. The complaint's factual allegations include the manner in which Pratt and Burrell worked for Defendants-Appellants and how Defendants-Appellants exercised control over that work. These factual allegations do not touch matters covered by the arbitration clause because they do not evince the parties' intent to enter into an employment relationship. Instead, the more salient factual allegation for assessing the arbitration agreement's scope is how Defendants-Appellants *labeled* Pratt and Burrell as non-employees.

For purposes of the FLSA, a company's decision to label a worker as an "independent contractor" or a non-employee will not carry the day. *See Irizarry v. Catsimatidis*, 722 F.3d 99, 104 (2d Cir. 2013). Contract law, on the other hand, is an area of law where labels matter. The focal point of this dispute is not related to the Compensation Agreements. Defendants-Appellants have maintained before the district court that Pratt and Burrell were independent contractors, and they may attempt to use the Sales Agreements to prove that. This dispute is about events that transpired when the Sales Agreements were in effect, and these contracts have their own dispute resolution mechanism. After Defendants-

17

Appellants affirmatively stated that Pratt and Burrell were not employees for over a year, it rings hollow for them to now argue that the parties intended the word "employment" in the Compensation Agreements to apply retroactively as to this dispute.  Finding positive assurance that the parties did not intend for the arbitration agreement to be retroactive, we affirm the district court's denial of the motion to compel arbitration.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.