LAI CHAN, Hui Chen, and Xui Xie, individually and on behalf of all others similarly situated, Plaintiffs,

v.

CHINESE-AMERICAN PLANNING COUNCIL HOME ATTENDANT PROGRAM, INC., Defendant.

15-cv-9605 (KBF)

United States District Court, S.D. New York.

Signed 02/03/2016

Filed 04/08/2016

Order denying reconsideration April 8, 2018

Liane Fisher, Michael Taubenfeld, Serrins Fisher LLP, Carmela Huang, David Andrew Colodny, New York, NY, for Plaintiffs.

Jose Francisco Irias, Kenneth Harold Kirschner, Hogan Lovells US LLP, New York, NY, for Defendant.

## MEMORANDUM DECISION & ORDER

KATHERINE B. FORREST, District Judge

On March 11, 2015, plaintiffs Lai Chan, Hui Chen, and Xue Xie, individually and as class representatives, brought this action in New York State Supreme Court against their employer, defendant Chinese-American Planning Council Home Attendant Program, Inc. ("CPC"), alleging several wage-related claims under New York law. (Compl., ECF No. 1-2.) After plaintiffs amended their complaint to include claims alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 206, 207, CPC removed the action to this Court. (Am. Compl., ECF No. 1-1.) On December 15, 2015, CPC moved to compel arbitration and stay the instant action pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 3-4, based on the arbitration provisions of a collective bargaining agreement executed between plaintiffs' bargaining representative, 1199 SEIU United Healthcare Workers East (the "Union") and CPC. (ECF No. 5.) For the reasons set forth below, defendant's motion is GRANTED.

 There is a strong federal policy favoring arbitration under the FAA, which requires federal courts to enforce valid arbitration agreements and stay underlying litigation. See 9 U.S.C. §§ 2-3; Moses H. Cone Mem'l Hosp. v. Mercury Contr. Corp., 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."). The FAA provides that "an agreement in writing to submit to arbitration an existing controversy ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract," 9 U.S.C. § 2, including "generally applicable contract defenses, such as fraud, duress, or unconscionability," Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996). "Under the [FAA], a district court must stay proceedings if satisfied that the parties have agreed in writing to arbitrate an issue or issues underlying the district court proceeding. The FAA leaves no discretion with the district court in the matter." Katz v. Cellco P'ship, 794 F.3d 341, 344 (2d Cir.2015) (quoting McMahan Sec. Co. v. Forum Capital Mkts., 35 F.3d 82, 85–86 (2d Cir.1994)).

 On a motion to compel arbitration, the moving party must show that 1) there is a valid agreement between the parties to arbitrate disputes, and 2) the instant dispute falls within the scope of the arbitration agreement. See Hartford Acc. & Indem. Co. v. Swiss Reinsurance Am. Corp., 246 F.3d 219, 226 (2d Cir.2001); see also JLM Indus., Inc. v. Stolt–Nielsen SA, 387 F.3d 163, 169 (2d Cir.2004) (stating that the Court must consider: (1) "whether the parties agreed to arbitrate", (2) "the scope

of that agreement", (3) "if federal statutory claims are asserted, [whether] Congress intended those claims to be nonarbitrable", and (4) if some, but not all, of the claims in the case are arbitrable, whether "to stay the balance of the proceedings pending arbitration"). Based on a review of parties' submissions, it is clear that there is a valid arbitration agreement in place and that the instant action falls within the scope of that agreement.

■ The named plaintiffs and all putative class members are members of the Union, which, since 2009, has had a collective bargaining agreement ("CBA") governing the employment relationship between plaintiffs and CPC. (Kirschner Affirm. ¶ 2, ECF No. 7.) The CBA has been modified and extended by several memoranda of agreement ("MOA"). (Kirschner Affirm. ¶ 2.) Most recently, on January 21, 2016—in other words, during the pendency of this motion—the Union's members ratified an MOA, dated December 7, 2015, between CPC and the Union (the "2015 MOA"). (See Ma Decl. ¶ 3 & Ex. A, ECF No. 40; Kirschner Affirm., Ex. 4, ECF No. 7-4.)[1] The CPC Board of Directors had ratified the 2015 MOA on January 20, 2016. (Ma Decl. ¶ 2.) Having been ratified by both sides, a valid con-

tract has been formed and the 2015 MOA is now in effect.[2] In pertinent part, the 2015 MOA contains amendments that require plaintiffs to submit certain claims to a specified mediation and arbitration process. (Kirschner Affirm., Ex. 4 at 9-10.) As a result, there is a valid agreement between the parties to arbitrate disputes.

■ The 2015 MOA clearly specifies that all wage and hour-related claims brought by employees or the Union must be submitted exclusively to the alternative dispute resolution procedures provided for in the agreement. (Kirschner Affirm., Ex. 4 at 9-10.) In relevant part, the 2015 MOA states:

> Accordingly, to ensure the uniform administration and interpretation of this Agreement in connection with federal, state, and local wage-hour and wage parity statutes, all claims brought by either the Union or Employees, asserting violations of or arising under the Fair Labor Standards Act ("FLSA"), New York Home Care Worker Wage Parity Law, or New York Labor Law (collectively, the "Covered Statutes"), in any manner, shall be subject exclusively, to the grievance and arbitration procedures described in this Article.

1. On January 19, 2016, two days before the Union's scheduled ratification vote, plaintiffs moved for a temporary restraining order, which sought to enjoin CPC and the Union from communicating with putative class members about the 2015 MOA's arbitration clause and to enjoin the Union's ratification vote. (ECF No. 21.) The Court denied that motion on January 21, 2016, on the grounds that plaintiffs failed to show irreparable harm or that they would likely succeed on the merits (or that they provided sufficiently serious grounds to warrant such relief). (ECF No. 36.)

Prior to the removal of this action to this Court, the New York State Supreme Court denied defendant's motion to compel arbitration based on the then-operative 2014 MOA. The state court's decision is not preclusive of

defendant's motion here because, inter alia, that court was not addressing the now operative 2015 MOA.

2. To the extent that plaintiffs maintain that the 2015 MOA is not yet in effect because it has not yet been approved by the New York City Human Resources Administration ("HRA"), the Court is not persuaded. Plaintiffs do not work on HRA cases, and thus the HRA has no impact on the terms and conditions of their employment. (Ma Decl. ¶ 10.) Furthermore, HRA Deputy Commissioner Arnold Ng has indicated to CPC that HRA intends to approve the 2015 MOA shortly (Ma Decl. ¶ 6), and CPC and the Union have treated the 2015 MOA as in effect and operating in all respects (Ma Decl. ¶¶ 8-9).

(Kirschner Affirm., Ex. 4 at 9.) The CBA thus expressly evinces the parties' intention to arbitrate the precise claims brought here, including all claims brought under the FLSA, New York Home Care Worker Wage Parity Law, and New York Labor Law.[3]

■■ Plaintiffs seek to avoid this mandatory arbitration clause by arguing that the agreement to arbitrate embodied in the 2015 MOA cannot apply retroactively to claims that may have accrued prior to the execution of the 2015 MOA. This argument is meritless. The Second Circuit has indicated that, in the absence of a provision placing a temporal limitation on arbitrability, an arbitration provision may cover claims that accrued prior to the execution of the agreement to arbitrate. Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc., 198 F.3d 88, 98–99 (2d Cir.1999); see also Arrigo v. Blue Fish Commodities, Inc., 408 Fed.Appx. 480, 481–82 (2d Cir.2011) (summary order); Duraku v. Tishman Speyer Properties, Inc., 714 F.Supp.2d 470, 474 (S.D.N.Y.2010). Significantly, the arbitration provision at issue here contains no such clear limiting language. Furthermore, to the extent there is doubt about the scope of arbitrable issues, the Court must resolve that doubt in favor of arbitration. Green Tree Financial Corp. v. Bazzle, 539 U.S. 444, 452–53, 123 S.Ct. 2402, 156 L.Ed.2d 414 (2003) (plurality opinion); Citigroup, Inc. v. Abu Dhabi Investment Auth., 776 F.3d 126, 130 (2d Cir. 2015). "While a gateway dispute about whether the parties are bound to a given arbitration clause raises a question of arbitrability for a court to decide," it is the role of the arbitrator, rather than this Court, to resolve issues of contract interpretation and arbitration procedures in the first instance. Duran v. J. Hass Grp., L.L.C., 531 Fed.Appx. 146, 147 (2d Cir. 2013) (summary order) (quotation marks omitted); see UBS Financial Services, Inc. v. West Virginia Univ. Hosps., Inc., 660 F.3d 643, 654 (2d Cir.2011) (stating that "procedural questions which grow out of the dispute and bear on its final disposition" are generally for the arbitrator to resolve in the first instance (quotation marks omitted)).

■ Plaintiffs further argue that this Court should not compel them to arbitrate their claims because arbitration will be cost prohibitive, preventing them from vindicating their rights in that forum. "[W]here, as here, a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." Green Tree Financial Corp.–Alabama v. Randolph, 531 U.S. 79, 92, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000). Plaintiffs have failed to support this argument with any evidence—as opposed to mere speculation—that they are likely to incur prohibitive costs by pursuing their claims through arbitration. Plaintiffs'. argument is, furthermore, belied by the arbitration procedures provided for in the 2015 MOA; as any fees pertaining to a grievance submitted by the Union to mediation and/or arbitration are to be shared equally by the Union and CPC, with the employees bearing no fees at all. (Kirschner Affirm., Ex. 4 at 10; Kirschner Reply Decl. ¶ 5, ECF No. 39.) Because plaintiffs have failed to meet their burden to show that arbitration

---

**3.** Plaintiffs argue that they cannot be forced through a collective bargaining agreement to arbitrate claims brought under the FLSA. The Court rejects this argument. Numerous courts have held that FLSA claims may be subject to mandatory arbitration clauses. Arrigo v. Blue Fish Commodities, Inc., 704 F.Supp.2d 299, 304 (S.D.N.Y.2010), aff'd, 408 Fed.Appx. 480 (2d Cir.2011); Martin v. SCI Mgmt. L.P., 296 F.Supp.2d 462, 467 (S.D.N.Y.2003).

would be cost-prohibitive, the Court rejects this argument.

Accordingly, defendant's motion to compel arbitration is GRANTED.[4] This action shall be stayed pending arbitration. <u>See</u> 9 U.S.C. § 3.

The Clerk of Court is directed to close the motion at ECF No. 5.

SO ORDERED.

### Memorandum Decision & Order On Reconsideration

Plaintiffs Lai Chan, Hui Chen, and Xue Xie move for reconsideration of this Court's Memorandum Decision and Order of February 3, 2016. (ECF No. 43.) That decision granted defendant Chinese-American Planning Council Home Attendant Program, Inc.'s ("CPC") motion to compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 3-4, based on the arbitration provisions of a collective bargaining agreement executed between plaintiffs' bargaining representative, 1199 SEIU United Healthcare Workers East (the "Union"), and CPC. (<u>See</u> ECF No. 42.)

Plaintiffs seeks reconsideration of the Court's February 3, 2016 decision pursuant to Federal Rule of Civil Procedure 60 and Local Civil Rule 6.3, arguing that the Court erred in determining the temporal scope of the arbitration clause by relying on a presumption of arbitrability, rather than assessing the expectations of the parties.[1] For the reasons set forth below, plaintiffs' motion is DENIED.

## I. STANDARD OF REVIEW

■ Federal Rule of Civil Procedure 60(b) provides:

On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). "By its own terms, Rule 60(b) applies only to judgments that are final." <u>Transaero, Inc. v. La Fuerza Aerea Boliviana</u>, 99 F.3d 538, 541 (2d Cir. 1996). A district court is, however, "vested with the power to revisit its decisions before the entry of final judgment and is free from the constraints of Rule 60 in so doing." <u>Id.</u>

■ "Local Civil Rule 6.3 provides that a party may submit a motion for

---

4. The Court has considered plaintiffs' other arguments, and concludes that they are without merit.

1. Plaintiffs' opening brief also argued that the Court erred in finding that the 2015 Memorandum of Agreement ("2015 MOA") became effective even though it had not yet been approved by the New York City Human Resources Administration ("HRA"). (<u>See</u> Pls.' Mem. of Law in Support of Mot. for Recons. at 4-6, ECF No. 44.) Plaintiffs subsequently withdrew that argument based on a letter they received from HRA. (Pls.' Reply Mem. of Law in Support of Mot. for Recons. at 1, ECF No. 46.) As a result, there is no dispute with respect to the threshold question of whether the parties have agreed to arbitrate. The only live issue is whether the scope of that agreement encompasses the claims that plaintiffs have brought in this suit.

reconsideration 'setting forth concisely the matters or controlling decisions which counsel believes the court has overlooked.'" Sutherland v. Ernst & Young LLP, 847 F.Supp.2d 528, 531 (S.D.N.Y. 2012). A motion for reconsideration under Local Rule 6.3 is governed by the same standards as those governing a motion brought pursuant to Federal Rule of Civil Procedure 59(e). In re CRM Holdings, Ltd. Sec. Litig., No. 10 CIV 00975(RPP), 2013 WL 787970, at *2 n. 3 (S.D.N.Y. Mar. 4, 2013); 4200 Ave. K LLC v. Fishman, No. 00 CIV. 8814(RLC), 2001 WL 498402, at *1 (S.D.N.Y. May 10, 2001). Such a motion may be granted "where a court overlooks controlling decisions or factual matters that were put before it in the underlying motion ... and which, had they been considered, might have reasonably altered the result before the court." Murdaugh v. City of New York, No. 10 Civ. 7218(HB), 2011 WL 1991450, at *1 (S.D.N.Y. May 19, 2011) (citing DGM Invs. v. New York Futures Exch., Inc., 288 F.Supp.2d 519, 523 (S.D.N.Y.2003)). "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995). "[A] motion to reconsider should not be granted where the moving party is solely attempting to relitigate an issue that already has been decided." New York v. Parenteau, 382 Fed.Appx. 49, 50 (2d Cir. 2010) (summary order).

## II. ANALYSIS [2]

Plaintiffs argue that this Court erred in its February 3, 2016 decision because it failed to follow Second Circuit precedent when it determined that the arbitration clause's temporal scope encompasses claims filed before the effective date of the 2015 MOA. In that decision, the Court stated that, given the absence of clear limiting language with respect to retroactivity, the Court had to resolve any doubt about that issue in favor of arbitration. (Feb. 3, 2016 Mem. Decision & Order at 5, ECF No. 42.) Plaintiffs argue that this ruling is inconsistent with Holick v. Cellular Sales of New York, LLC, 802 F.3d 391 (2d Cir.2015), where the Second Circuit, in considering the retroactivity of an arbitration clause, stated that "the correct approach is to assess whether the parties intended for the arbitration clause to cover the present dispute." Id. at 397–98. In that case, based on the facts presented to it (which the Court explains below), the Second Circuit concluded that the presumption of arbitrability was overcome based on the parties' conduct prior to executing the agreement to arbitrate, which gave "positive assurance that the arbitration clause's scope [was] temporally limited." Id. at 398.

While this Court recognizes that it is bound by Holick to the extent it is applicable, and therefore must effectuate the parties' intent as to the issue of retroactivity, that does not end the Court's inquiry as to whether plaintiffs are entitled to relief on this motion. Plaintiffs must also show that consideration of Holick "might reasonably be expected to alter the conclusion reached

**2.** At the outset, CPC argues that plaintiffs' motion is improper because the Court's February 3, 2016 decision was not a final appealable order. While the Court agrees that, to the extent that plaintiffs seek relief under Rule 60(b), their motion is not proper because no

final judgment or order has been issued in this action, the Court finds that it may reach the merits of plaintiffs' motion to the extent it seeks relief under Local Rule 6.3 and based on the Court's inherent power to revisit a decision prior to entry of final judgment.

by the court." Shrader, 70 F.3d at 257. As explained below, because Holick is materially distinguishable from this case and the Court finds nothing in the language or reasoning of Holick that alters the Court's ultimate determination that the 2015 MOA has retroactive application to plaintiffs' claims here, plaintiffs' motion for reconsideration is denied. A detailed review of Holick is instructive.

In Holick, sales representatives for an entity that sold cellular service plans and merchandise brought a putative class action alleging that they were unlawfully denied various forms of compensation and benefits because the defendants improperly classified them as independent contractors, rather than as employees. Holick, 802 F.3d at 392–93. The plaintiffs had signed two contracts with defendants that covered two different periods. In the first contract, entered into in 2010, each plaintiff had signed a "Non-Exclusive Sales Agreement" with defendants as representatives of corporate entities that each had been required to form in order to become defendants' sales representatives. Id. at 393. Those agreements stated that each respective plaintiff's company was an "independent contractor" of defendants and each plaintiff was an employee of his or her own company. Id. In contrast, each of the second set of agreements, entered into in 2011, made plaintiffs full-time employees and also contained arbitration clauses. Id. Those clauses stated that "All claims, disputes, or controversies arising out of, or in relation to this document or Employee's employment with [defendants] shall be decided by arbitration." Id. Notably, plaintiffs' suit was temporally confined to events that occurred prior to the execution of the second set of agreements, and they alleged that defendants began treating them differently after those agreements were signed. Id. at 394.

The Second Circuit was faced with the question whether the dispute, which was temporally confined to the period during which the first set of agreements was in effect, fell within the scope of the arbitration clauses contained only in the second set of agreements. Finding that the plain language of the second set of agreements was ambiguous as to when the plaintiffs' employment with defendants had commenced, the Court looked to parol evidence to discern the parties' intent. Id. at 396–97. Distinguishing the circumstances from those at issue in Coenen v. R.W. Pressprich & Co., 453 F.2d 1209 (2d Cir. 1972), where the Court concluded that a claim predating an arbitration agreement fell with the agreement's scope in the absence of an express temporal limitation, id. at 1212, the Court in Holick found that the presumption of arbitrability was overcome because it found "positive assurance" that the arbitration clause's scope was temporally limited, Holick, 802 F.3d at 398. The Court stated that it "reach[ed] this conclusion, in large part, based on the fact that when the [second set of agreements] were signed, the parties' contractual positions changed in a way that impacted arbitrability." Id. at 398. The Court further explained that the parties had an "evolving business relationship" that was "directly relevant to whether the parties intended to have an employment relationship prior to executing" the second agreement. Id. The Court therefore concluded that "[i]t would be inconsistent with the parties' conduct to construe the [second agreement], which referenced "employment," to apply to· a period when the parties themselves did not contemplate such a relationship." Id. As a matter of contract interpretation, the Court stated that after defendants "affirmatively stated that [plaintiffs] were not employees for over a year, it rings hollow for them to now argue that the parties intended the word 'employment' in the

[second set of agreements] to apply retroactively as to this dispute." Id. at 399.

The above detailed discussion of the facts, circumstances and the Second Circuit's reasoning in Holick makes clear that it is materially distinguishable from this case and does not govern the present dispute. First, in contrast to Holick, the 2015 MOA did not alter plaintiffs' employment status in a manner indicative of the parties' intent that a line should be drawn between the periods before and after that agreement was executed. Plaintiffs' status as employees governed by the parties' collective bargaining agreement both before and after the 2015 MOA is clear—the only relevant aspect of the parties' relationship that changed was that an arbitration clause now covered certain disputes. Unlike the defendants in Holick, there is nothing inconsistent about CPC's position with respect to the merits of plaintiffs' claims and its view as to the scope of arbitrable issues. Second, this case involves an arbitration clause contained in a collective bargaining agreement, a circumstance that the Court in Holick expressly distinguished from the individual contracts at issue in that case. Holick, 802 F.3d at 397 n. 10 ("As the Supreme Court has noted, 'arbitrators are in a better position than courts to interpret the terms of a [collective bargaining agreement].'" (quoting Wright v. Universal Mar. Serv. Corp., 525 U.S. 70, 78, 119 S.Ct. 391, 142 L.Ed.2d 361 (1998))). Third, whereas the Court in Holick found positive assurance based on the parties' relationship that they did not intend to make the dispute that was the subject of the suit arbitrable, here plaintiffs have presented no competent evidence creating such a "positive assurance that the arbitration clause is not susceptible to an interpretation that covers the asserted dispute." Holick, 802 F.3d at 395. The Union's subsequent December 11, 2015 letter, in which it argued that "CPC cannot retro-actively seek to arbitrate a claim brought at a time when there was no contract provision in effect permitting arbitration of the wage and hour lawsuit against CPC" (Taubenfeld Decl., Ex. 3, ECF No. 18-3), does not create the sort of positive assurance—based on the parties' preceding course of conduct—that was present in Holick. This case is therefore more akin to Coenen, see Coenen, 453 F.2d at 1212, which Holick distinguished but did not overrule, Holick, 802 F.3d at 397–98. As in Coenen, the presumption of arbitrability (which is left in place by Holick, id. at 395) has not been overcome.

In short, based on the aspects of the present dispute that are distinguishable from those at issue in Holick, the Court is unpersuaded that consideration of Holick alters the Court's decision that plaintiffs' claims are arbitrable. Plaintiffs' motion for reconsideration is therefore denied.

## III. CONCLUSION

For the foregoing reasons, Plaintiffs' motion for reconsideration is DENIED. The Clerk of Court is directed to close the motion at ECF No. 43.

SO ORDERED.

Order denying reconsideration April 8, 2016.