NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 19a0347n.06

Case No. 18-2037

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Jul 08, 2019
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| TODD WHITE, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| ACELL, INC., | ) | THE EASTERN DISTRICT OF |
| | ) | MICHIGAN |
| Defendant-Appellee. | ) | |

BEFORE: WHITE, BUSH, and LARSEN, Circuit Judges.

**JOHN K. BUSH, Circuit Judge.** At issue in this appeal are clauses relating to arbitration and litigation in two agreements entered into between Todd White and ACell, Inc. ("ACell"), his former employer. Both agreements call for Maryland law to govern them. In one contract, the parties agreed to arbitrate in Montgomery County, Maryland "any dispute between us . . . , including but not limited to claims of employment discrimination," but allowed ACell at its "sole option" to "forego arbitration of disputes relating to violations of" certain specified sections of that contract and "seek judicial enforcement, including injunctive relief" in "the state and federal courts of Montgomery County, Maryland." R. 6-2, PageID 54. The other contract provides that "any lawsuit relating to" White's employment "may be filed only in the state court located within Howard County, Maryland, or the federal courts located in the United States District of Maryland." *Id.* at PageID 49.

After ACell terminated White's employment, he claimed illegal discrimination by ACell but did not seek relief in Maryland through either arbitration or litigation. Instead, White brought a lawsuit in the United States District Court for the Eastern District of Michigan, asserting a violation of the Michigan Whistleblower Protection Act and retaliation in violation of the federal False Claims Act. The district court dismissed the complaint under Federal Rule of Civil Procedure 12(b)(6) on the grounds that White had brought his claims in the wrong state and to the wrong forum. We **AFFIRM**.

I.

The provisions at issue were agreed to when ACell, a Maryland-headquartered company, hired White as territory manager for an area located in the Eastern District of Michigan. Prior to his starting work, on September 10, 2013, White signed the "Employment Terms and Conditions for Sales Representatives." It does not appear that ACell signed this document, but there is no dispute that it is a contract between the parties that ACell accepted. We refer to it (as do the parties) as the "Terms Agreement." It states, in pertinent part:

> You agree that your employment by ACell is governed by the laws of the State of Maryland, without regard for its conflict of laws rules. You agree that any lawsuit relating to your employment with ACell may be filed only in the state court located within Howard County, Maryland, or the federal courts located in the United States District of Maryland, and you agree to submit to venue and personal jurisdiction in those courts.

R. 6-2, PageID 49. This contractual language we call the "Howard County Provision."

The Terms Agreement references, among other things, a "proprietary information, inventions, and non-competition agreement" that White was to sign "[b]efore beginning any work or training with ACell." *Id.* at PageID 48. This latter agreement is entitled the "Employee Proprietary Information, Inventions, and Non-Competition Agreement," which we refer to (as do the parties) as the "Employment Agreement." This contract, which White and ACell signed on

2

Case No. 18-2037, *White v. Acell, Inc.*

September 10 and 11, 2013, respectively, contains the following (the "Montgomery County Provision"):

> **12.1    Governing Law; Consent to Personal Jurisdiction.**    This Agreement will be governed by and construed according to the laws of the State of Maryland, as such laws are applied to agreements entered into and to be performed entirely within Maryland between Maryland residents.  The Company [i.e., ACell] and I [i.e., White] agree that any dispute between us, regardless of whether such dispute relates to this Agreement, including but not limited to claims of employment discrimination pursuant to federal, state or local statutes or common law, shall be resolved by mandatory binding arbitration pursuant to the commercial rules of arbitration of the American Arbitration Association with such arbitration to take place in Montgomery County, Maryland before a single arbitrator, regardless of the amount in controversy.  Notwithstanding the foregoing, at the Company's [i.e., ACell's] sole option, the Company may forego arbitration of disputes relating to violations of the Sections 1, 2, 4, 5, 6 and 8 of this Agreement and seek judicial enforcement, including injunctive relief, for violations of these provisions.  For purposes of such judicial enforcement, the parties hereto expressly consent to the personal jurisdiction of the state and federal courts of Montgomery County, Maryland.

R. 6-2, PageID 54.

In 2018, ACell terminated White's employment—wrongfully, White claims.  However, instead of pursuing arbitration in Montgomery County, Maryland (as provided in the Montgomery County Provision), White sued in the United States District Court for the Eastern District of Michigan.  White argues that arbitration is not required because the arbitration clause of the Montgomery County Provision is irreconcilably contradictory to the forum-selection clause of the Howard County Provision and therefore both clauses are invalid for lack of mutual assent.

The district court found no contradiction and agreed with ACell that the arbitration clause is valid and enforceable and requires arbitration of this dispute in Montgomery County, Maryland. The district court therefore granted ACell's motion to dismiss White's complaint under Federal Rule of Civil Procedure 12(b)(6).  We review this ruling de novo.  *Cooper v. MRM Inv. Co.*, 367 F.3d 493, 497 (6th Cir. 2004); *see also Stanek v. Greco*, 323 F.3d 476, 478 (6th Cir. 2003).

II.

Under the Federal Arbitration Act ("FAA"), arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA thus requires courts to "enforce arbitration agreements according to their terms," *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1415 (2019) (quoting *Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018)), and it allows courts to invalidate an arbitration agreement on "'generally applicable contract defenses' like fraud or unconscionability, but not on legal rules that 'apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue.'" *Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 137 S. Ct. 1421, 1426 (2017) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)).

Applying this authority, we consider the relevant terms: the arbitration clause in the Montgomery County Provision of the Employment Agreement calls for "mandatory binding arbitration" of "any dispute" brought by White against ACell "regardless of whether such dispute relates to this Agreement, including but not limited to claims of employment discrimination pursuant to federal, state or local statutes or common law." R. 6-2, PageID 54. White does not dispute that this arbitration clause, if enforced according to its broad wording, requires arbitration of the current dispute. He maintains, however, that the arbitration clause is invalid based upon the generally applicable contract defense of lack of mutuality of agreement between the parties. Specifically, White contends that the arbitration clause of the Montgomery County Provision and the forum-selection clause of the Howard County Provision "contain two completely different and conflicting terms for" the resolution of legal disputes and "[t]herefore, the District Court . . . erred in finding a meeting of the minds as to the manner of dispute resolution and compelling arbitration." Appellant Br. at 11.

To address White's defense, we first determine the applicable law. Both parties argue, and we agree, that Maryland law governs the issue. That is because, in interpreting a contract, which involves application of state law, we apply the choice-of-law rules of the forum state (here, Michigan), *see Banek Inc. v. Yogurt Ventures U.S.A., Inc.*, 6 F.3d 357, 361 (6th Cir. 1993) (citing *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 490 (1941)), and those rules call for Maryland law to apply. After all, that is the law that the parties, in both the Montgomery County and Howard County Provisions, agreed would govern. The parties' choice of Maryland law is to be honored because Michigan follows § 187 of the Restatement (Second) of Conflict of Laws, *see Chrysler Corp. v. Skyline Industrial Services, Inc.*, 528 N.W.2d 698, 703 (Mich. 1995), under which a choice-of-law clause will be enforced in most cases "even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement." Restatement (Second) of Conflict of Laws § 187(2) (1988). As comment d to § 187 makes clear, an express choice of law provision will be applied in a dispute over the "substantial validity" of a contract. *Id.* at cmt. d.

Granted, there are two exceptions to the general rule that would each render a choice-of-law provision ineffective:

> Section 187(2)(a) provides that the choice of law will not be followed if the chosen state has no substantial relationship to the parties or the transaction, or when there is no reasonable basis for choosing that state's law. Section 1872(2)(b) bars the application of the chosen state's law when it "would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which . . . would be the state of the applicable law in the absence of an effective choice of law by the parties."

*Chrysler Corp.*, 528 N.W.2d at 704 (quoting Restatement (Second) of Conflict of Laws § 187(2)).

Neither exception, however, is applicable here.

The first exception does not apply because Maryland does have a substantial relationship to the parties: ACell is headquartered in Maryland, and White's employment with ACell, a Maryland business, necessarily involves Maryland's interests. *See Chrysler Corp.*, 528 N.W.2d at 704–05 (explaining how business contacts create a reasonable basis for choosing a state's law as governing authority); *see also* Restatement (Second) of Conflict of Laws § 187 cmt. f (stating that parties have a substantial relationship with a state if one of the parties has its principal place of business there).

The second exception is also inapplicable, given that the dispute-resolution provisions at issue do not appear to violate any fundamental Michigan policy. Although the commentary to the Second Restatement explains that "[n]o detailed statement can be made of the situations where a 'fundamental' policy of the state . . . will be found to exist," it is clear that, "[t]o be 'fundamental,' a policy must in any event be a substantial one," such as a statute that makes certain types of contracts illegal. Restatement (Second) of Conflict of Laws § 187 cmt. g. On the other hand, a fundamental rule is not "likely to be represented . . . by general rules of contract law." *Id.* The question before us is whether certain contractual language is invalid for lack of mutuality or mutual assent—a general contract requirement. Neither party argues that application of Maryland law on this subject would violate any fundamental Michigan policy, nor is there any evidence to suggest that Michigan has a greater interest than Maryland in determining the validity and enforceability of the clauses at issue. *Id.* (explaining that deference is given to a choice of law provision if the chosen state's interest is based on its relationship to the parties or the contract itself). Therefore, under Michigan's choice-of-law rules, we honor the parties' contractual preference and apply Maryland law to address White's defense of lack of mutuality or mutual assent.

Turning now to that law, it shows that Maryland courts consider "a manifestation of mutual assent" to be an "essential prerequisite to the creation or formation of a contract." *Cochran v. Norkunas*, 919 A.2d 700, 708 (Md. 2007). "Manifestation of mutual assent includes two issues: (1) intent to be bound, and (2) definiteness of terms." *Id.* On appeal, White argues only that the terms of the two provisions—one providing for arbitration; the other for litigation—conflict such that there could not have been a meeting of the minds on the matter of dispute resolution.

When evaluating the contracting parties' intent, Maryland courts objectively interpret the language of the contract itself, giving effect to its plain meaning, so long as the contract is unambiguous. *Advance Telecom Process LLC v. DSFederal, Inc.*, 119 A.3d 175, 183 (Md. Ct. Spec. App. 2015). White concedes that a party's intent to be bound may be manifested by words and actions, *see* Appellant Br. at 10, and Maryland courts have long considered signatures as sufficient evidence of intent and "mutuality or assent." *Porter v. Gen. Boiler Casing Co.*, 396 A.2d 1090, 1095 (Md. 1979). White's signature on both contracts, along with the signature of an ACell representative on the Employment Agreement and ACell's acceptance of the Terms Agreement through its conduct, demonstrated mutual assent to the terms of those agreements. Thus, none of the contractual language at issue is invalid or unenforceable for want of intent to be bound.

The terms of those clauses also are sufficiently definite to establish mutual assent. Although there do not appear to be any reported Maryland cases dealing with interpretation of a contractual arrangement with dispute-resolution clauses similar to those at issue here, there are cases from other federal circuits interpreting analogous language. In those cases, courts generally have interpreted the contractual provisions to complement, rather than contradict, each other.

For example, in *Bank Julius Baer & Co. v. Waxfield Ltd.*, the Second Circuit refused to "nullify an arbitration clause unless the forum selection clause [calling for litigation in a particular court] specifically precludes arbitration." 424 F.3d 278, 284 (2d Cir. 2005), *abrogation on other grounds recognized by Holick v. Cellular Sales of N.Y., LLC*, 802 F.3d 391 (2d Cir. 2015) (quoting *Pers. Sec. & Safety Sys. v. Motorola*, 297 F.3d 388, 396 n.11 (5th Cir. 2002)). The Second Circuit reasoned that the contract required the parties to arbitrate their disputes, and that the forum-selection clause allowing litigation pertained only to when a party filed suit seeking to enforce the arbitration award. *Id.* at 285. The Third Circuit reached a similar conclusion in *Patten Securities Corp. v. Diamond Greyhound & Genetics, Inc.*, 819 F.2d 400 (3d Cir. 1987), *abrogation on other grounds recognized by Reading Health Sys. v. Bear Stearns & Co.*, 900 F.3d 87, 93 (3d Cir. 2018). In that case, the court ruled that both an arbitration clause and a forum-selection clause relating to litigation "can be given effect, for arbitration awards are not self enforceable. They may only be enforced by subsequent judicial action . . . . [T]he forum selection clause would appear to dictate the location of any action to enforce the award." *Id.* at 407.

In granting ACell's motion to dismiss, the district court took a similar approach, stating: "I don't see any conflict with the [T]erms [A]greement. I see that there are situations where you may have to go to court to enforce [the arbitration provision] and, therefore, the [T]erms [A]greement tells you where you have to go to court." R. 14, PageID 158. The district court's logic is in accord with Maryland law, which "attempt[s] to construe contracts as a whole, to interpret their separate provisions harmoniously, so that, if possible, all of them may be given effect," rather than rendering them void. *Walker v. Dep't of Human Res.*, 842 A.2d 53, 61 (Md. 2004).

Also, the Terms Agreement specifically references the Employment Agreement. It is therefore reasonable to conclude that the parties contemplated that the provisions of the

8

Employment Agreement would be read in conjunction with and consistent with the provisions of the Terms Agreement. *See Schneider Elec. Bldgs. Critical Sys., Inc. v. Western Sur. Co.*, 149 A.3d 778, 787 (Md. 2016) ("[W]here the contract comprises two or more documents, the documents are to be construed together, harmoniously, so that, to the extent possible, all of the provisions can be given effect." (citations omitted)).

With these considerations in mind, we turn to the arbitration clause of the Montgomery County Provision. As the district court held, this clause requires arbitration of all disputes that White might bring against ACell. With only limited exceptions, this clause calls for "any dispute" between the parties to be arbitrated, and the arbitration must be initiated in Montgomery County, Maryland. The limited exceptions allow ACell, at its "sole option," to bring litigation in the state or federal courts of Montgomery County if White violates certain specifically identified sections of the Employment Agreement. There is no comparable provision in the Employment Agreement for White to bring litigation to resolve any dispute against ACell. Therefore, the district court correctly held that this dispute brought at the instigation of White should be dismissed because it must be arbitrated in Montgomery County.

The forum-selection clause of the Howard County Provision does not contradict this conclusion. That clause is simply a choice-of-law and forum-selection provision. It does not negate the arbitration provision. It simply states that any lawsuits that are filed must be filed in Howard County. It provides that "any lawsuit relating to" White's employment "*may* be filed only in the state court located within Howard County" or in Maryland federal courts—and it contains no language specifically precluding arbitration for resolution of disputes. R. 6-2, PageID 49 (emphasis added). The absence of such language is significant, as the Second Circuit recognized. *See Bank Julius Baer & Co.*, 424 F.3d at 284; *see also Goldman, Sachs & Co. v. Golden Empire*

*Schs. Fin. Auth.*, 764 F.3d 210, 216 (2d Cir. 2014) (stating that, in the absence of a specific reference to arbitration, a forum-selection clause must be all-inclusive and mandatory to preclude arbitration). The arbitration clause of the Montgomery County Provision, by contrast, is mandatory: it provides that "*any* dispute between" the parties, "including but not limited to claims of employment discrimination . . . , *shall* be resolved" in arbitration in Montgomery County. *See* R. 6-2, PageID 54 (emphasis added). This mandatory language necessarily precludes litigation as an alternative to arbitration for dispute resolution, except for the limited Montgomery County litigation that ACell may bring, at its "sole option," for resolution of disputes concerning White's violation of specifically enumerated sections of the Employment Agreement.

This mandatory arbitration requirement should be applied here, for the FAA requires courts to "rigorously enforce" an arbitration agreement according to its terms. *See Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013). That is because there is a strong "national policy" favoring arbitration. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006). Thus, when analyzing an arbitration clause, a court should resolve "any doubts concerning the scope . . . in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). State law must be interpreted in accordance with the national policy favoring arbitration. *Cf. Lamps Plus*, 139 S. Ct. at 1415 ("[S]tate law is preempted to the extent it 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives' of the FAA." (quoting *Concepcion*, 563 U.S. at 352)).

The reference to litigation in the Howard County Provision, therefore, is best interpreted in accordance with the approach taken by the Second and Third Circuits interpreting analogous provisions. The Howard County Provision provides where litigation may be brought to compel arbitration and compliance with the arbitrator's award. It does not negate the requirement of the

Montgomery County Provision that all disputes brought by White against ACell be arbitrated in Montgomery County, Maryland.

III.

The arbitration clause in the Montgomery County Provision of the Employment Agreement is valid and enforceable, and White's dispute against ACell falls within the scope of that clause. White's defense of lack of mutual assent fails as a matter of law because the parties' signatures and conduct with respect to the Terms and Employment Agreements demonstrate such assent and the contractual language at issue is definite, given that the challenged clauses are complementary, not contradictory. The judgment of the district court dismissing the case is therefore **AFFIRMED**.